NO. 94-606

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

TRACY RAY CRAIG,

       Defendant and Appellant.

APPEAL FROM:   District Court of the Second Judicial District,
               In and for the County of Silver Bow,
               The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          William F. Hooks, Esq., Appellate Defender,
          Helena, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
          Micheal Wellenstein, Ass't Attorney General
          Helena, Montana

          Robert M. McCarthy, Silver Bow County Attorney,
          Butte, Montana

FILED

NOV 21 1995

Filed:

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   September 28, 1995

Decided:   November 21, 1995

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Tracy Ray Craig (Craig) appeals from a jury verdict in the District Court for the Third Judicial District, Silver Bow County, convicting him of robbery. We affirm.

The following issues are presented on appeal:

1. Did the District Court abuse its discretion in denying Craig's request for new counsel?

2. Did the District Court deny Craig his constitutional right to the assistance of counsel by refusing to substitute court-appointed counsel and thereby giving Craig the option of proceeding to trial with court-appointed counsel or appearing pro se?

3. Did the District Court deny Craig his right to represent himself by permitting "standby" counsel to become involved in the defense?

4. Did the District Court err in instructing the jury as to "admissions" and "confessions?"

On June 15, 1994, the State charged Craig with the robbery of the Ralph and Rose Formal Wear Shop in Butte, Montana. At the time of the robbery, Craig was on parole and was a resident of the Butte Pre-Release Center. Public Defender Pat McGee (McGee) was appointed to represent Craig. At his arraignment, Craig pled not guilty and the court set the trial for September 6, 1994, the court later rescheduled the trial for October 18, 1994. On September 26, Craig filed a motion to remove McGee as his counsel. In his motion, Craig stated:

> Said motion is based upon all of the files, records and proceedings herein, and more particularly upon the grounds that such representation of the Defendant by Mr. Pat McGee constitutes a distinct violation of the Defendant's protected rights to have effective assistance of Counsel for his defense, and presents a conflict of interest prejudicial to the Defendant's entire case.

3

The District Court denied Craig's motion for substitution of counsel and offered the following explanation for its ruling:

> Based on the pleadings and the record, the Court finds that the Defendant has failed to allege any facts in support of his motion that would entitle him to the requested relief. Section 46-13-101(4), MCA, requires the moving party to "state with particularity the grounds for the motion" and to provide a statement of the "relevant facts upon which the motion is being made." Defendant's vague allegation that continued representation of himbythe public defender "constitutes a distinct violation of the Defendant's protected rights" is insufficient to show any facts in support of his request for substitution of counsel.

After the court denied Craig's motion, McGee informed the court that Craig refused to discuss his defense with him. As a result, the court conducted a hearing to give Craig the opportunity to explain on the record why his public defender should be replaced. At the hearing, Craig stated that there was "no communication between me and my public defender." Additionally, Craig recited a litany of problems he had with McGee including: McGee refused to move for either discovery or change of venue; McGee failed to interview a witness and failed to suppress evidence; McGee advised him to enter a plea agreement; and, McGee had seen him only one time.

The deputy county attorney responded to Craig's allegations, as did McGee. Subsequently, the District Court found that McGee was providing effective assistance and the denied Craig's motion to substitute counsel. The court stated:

> As with any other defendant, you are entitled to hire any attorney you wish. Since you're obviously indigent, the Court appointed Mr. McGee for you. You do have the right in that circumstance for a court-appointed counsel, but you do not have the right to choose your own attorney.

3

So I'm just telling you now that you also have the right to represent yourself for your trial date.

Mr. McGee is going to stay on your case. I'm going to deny your motion to replace him with any other public defender. It's too late, among other things. I don't think there's been any ineffectiveness on his part in preparing this case for trial. Nevertheless, he'll be here in court the morning of the trial, and if you don't want to use him, that's fine. You go ahead and represent yourself or bring another attorney. If you want to make some arrangements otherwise, that's open for you. We're not going to change anything. The trial is going to go on as scheduled. Mr. McGee is going to be here as scheduled, and you're going to be here as scheduled. If you have a defense, we'd like to hear it from you that day.

Craig was given a copy of his file and trial began as scheduled. The first day of trial, before voir dire and in the presence of the prospective jurors, Craig told the court he was having problems with McGee acting as counsel. In response, the court asked him "do you intend to try the case yourself? You're entitled to do that." Craig replied: "I can't, Your Honor. I'm not a lawyer." The following colloquy took place concerning Craig's right to counsel:

THE COURT: You have a lawyer appointed for you. YOU don't have a lawyer of your choice when you're indigent, but we do appoint an experienced attorney for you. We've done that. Your attorney, Mr. McGee, has worked on this case since its inception. He's submitted, by the way, instructions as to the law of this case as I've requested all attorneys to do. He's going to be here in court, and we're going to proceed with this matter, and he's there for you to seek counsel from. You can ask for his help any time you wish, or you can remain mute if you wish. I don't care what you do. But you're here in court for a trial, and we're going to go ahead with this trial.

. . .

THE DEFENDANT: Like I said, Your Honor, we had that meeting on Friday. I told you there was no communication between me and this lawyer.

4

> THE COURT: This is the lawyer you got from the Court, from the county. This is the lawyer we're paying for you. He's on retainer for the year. You asked for change of counsel last week. That's too late to be asking for changes of counsel. But you, at any time, could hire your own attorney. I told you that. You can also act as your own attorney. In the meanwhile, this is your court-appointed attorney. You can use him if you wish. He's going to be here through the remainder of this trial. He'll be subject to your need for assistance if and so you do need assistance.

During voir dire, the court explained to Craig that he could examine the jurors or defer to McGee. The court suggested that, unless he objected, Craig should let McGee conduct the voir dire. Craig responded: "I can't pick them. I don't know nothing about them. . . I haven't been in this town long enough. There's nothing I can do, you know." The court replied: "Mr. Craig, that's why we've appointed one of the public defenders on your behalf." The court then directed McGee to conduct voir dire and he did so.

After conducting voir dire, McGee advised Craig that he was entitled to six peremptory challenges. Craig responded: "I can't pick them," refused to accept McGee's offers of assistance, and waived his peremptory challenges.

After the prosecutor gave his opening statement and it was Craig's opportunity to do so, the court told Craig that he could make his opening statement, waive it, have McGee give it, or he could reserve his opening statement until the end of the State's case-in-chief. Craig responded: "Well, as far as I'm concerned, Pat McGee is not my attorney. He gave up that Friday." The following discussion then took place:

5

THE COURT: He's still an attorney here from the Court's viewpoint. You can use him any time you wish. You can change your thinking on that.

THE DEFENDANT: I'm not an attorney, so I guess there won't be no defense.

THE COURT: Well, what does that mean? Do you want Mr. McGee to make an attempt here to make a statement?

THE DEFENDANT: That means there would be no defense.

THE COURT: I didn't hear that

THE DEFENDANT: I'm not a lawyer, so I can't defend myself, so there would be no defense.

THE COURT: Mr. McGee, do you want to make a statement now?

MR. McGEE: Your Honor, I'm under limited disability given the circumstances of what went on. I'll reserve any opinion.

The court found that Craig reserved his opening statement

During its case-in-chief, the State called seven witnesses and offered twelve exhibits. Neither Craig nor McGee cross-examined any witnesses nor objected to any exhibits. When the court asked Craig if he wished to cross-examine witnesses, Craig's response was silence, "no," or "I can't, I'm not a lawyer." When the court asked McGee if he wished to cross-examine the State's first witness, McGee responded: "Again, he relates that I'm not his attorney. So I guess there will be no cross-examination, Your Honor."

McGee participated in the settlement of jury instructions. During settlement of instructions but prior to the conclusion of the State's case-in-chief, the court instructed Craig concerning

6

his right to present evidence on his behalf and his right to testify.

> THE COURT: So you make your own decision, and you can either tell the Court at the appropriate time or have Mr. McGee tell me that you do or do not wish to testify. If you wish to call any other witness, you may do so. That's going to happen after the plaintiff rests his case in chief. So if you have nothing to put on, for instance, that will be the end of the case, and we'll submit the case to the jury by me reading the instructions and sending the jury out to deliberate. Okay.

After the State rested its case, the court again explained to Craig his rights to testify, present witnesses on his behalf, and reminded him of his right to make an opening statement. At that point, the following dialogue ensued:

> THE DEFENDANT: All right. For the record I'd like to state that I'm not able to present a defense because I'm not represented by a lawyer, and I'm not a lawyer so, you know, without a defense I move for a mistrial. And that's all I got to say.

> THE COURT: 1'11 consider that a motion for a mistrial. Do you want to say why?

> THE DEFENDANT: Hmm?

> THE COURT: Do you want to explain why you think you should have a mistrial?

> THE DEFENDANT: No defense

> THE COURT: Whose fault is that?

> THE DEFENDANT: I don't know

> THE COURT: Do you wish to add anything, Mr. Canty, or should I make a ruling?

> ' '

> MR. CANTY: You can rule, Your Honor

> THE COURT: You've got nothing to base that upon, Mr. Craig. Your counsel has been court appointed. He's been

7

here with you. He's worked on this case prior. He's consulted with you on numerous occasions. He's submitted instructions on your behalf. He's been here in case you needed his assistance. You didn't indicate at any time that you wanted help from him. I don't feel that's his problem nor Mr. Canty's problem nor my problem. That was your call.

THE DEFENDANT: I motioned for it.

THE COURT: Now for you to say you want a mistrial because you feel you didn't have an attorney does not have any merit to it. That motion is denied. Now, do you wish to add anything else, present any other defense?

THE DEFENDANT: No

As the parties settled the remaining instructions, McGee objected to an instruction offered by the State concerning admissions or confessions made by Craig. The court gave the instruction over McGee's objection. Craig declined to give a closing statement; the jury subsequently found him guilty of robbery.

On November 7, Craig filed, pro se, a Motion for Substitute Counsel to File For a New Trial. Pursuant to § 46-8-104, MCA, Craig asked the court to appoint new counsel "for the purposes of preparing and filing a motion for a new trial on his behalf and to represent him throughout these criminal proceedings which remain pending in the above-entitled action." During the hearing on the motion, the court told Craig that he could not switch attorneys whenever he wanted to, and denied the motion. The court proceeded to hold a sentencing hearing and impose judgment.

This case presents a predicament in that Craig did not request to proceed pro se, did not expressly waive his right to counsel, and yet failed to cooperate with his court-appointed attorney.

8

Apparently, Craig's intent was to manipulate and to frustrate the criminal proceedings. The fact that Craig did not seek to proceed pro se, did not expressly waive his right to counsel, and did not cooperate with his court-appointed attorney, raises a number of issues.

1. Did the District Court abuse its discretion in denying Craig's request for new counsel?

The question of whether the District Court abused its discretion in denying Craig's motion for new counsel is pivotal to the determination of the rest of Craig's claims. The Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee the fundamental right to assistance of counsel. State v. Langford (1994), 267 Mont. 95, 99, 882 P.2d 490, 492, cert. denied, 115 S.Ct. 1128, 130 L.Ed.2d 1090 (1995). Since Gideon v. Wainwright (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, an indigent defendant in a state criminal prosecution is entitled to representation by appointed counsel at public expense. State v. Pepperling (1978), 177 Mont. 464, 472, 582 P.2d 341, 345; State v. Enright (19881, 233 Mont. 225, 228, 758 P.2d. 779, 781. The indigent's right to counsel includes the right to have "effective assistance" of counsel. Pepperling, 582 P.2d at 345 (quoting State v. McElveen (1975), 168 Mont. 500, 503, 544 P.2d 820, 821).

If appointed counsel renders effective assistance, the defendant may not demand his appointed counsel's dismissal or substitution, nor may the defendant demand that certain counsel be appointed. Pepperling, 582 P.2d at 346. In other words, the right

9

to assistance of counsel does not grant defendants the right to counsel of their choice. State v. Colt (1992), 255 Mont. 399, 404, 843 P.2d 747, 750. It is well settled in Montana that when appointed counsel is rendering effective assistance, "the defendant has the choice of (1) continuing with counsel so appointed, or (2) having his counsel dismissed and proceeding on defendant's own, pro se." Pepperling, 582 P.2d at 346, see also State v. Lange (1987), 226 Mont. 9, 13, 733 P.2d 846, 849; Enright, 758 P.2d at 781-82; State v. Zackuse (1991), 250 Mont. 385, 386, 833 P.2d 142.

Nonetheless, if a defendant presents a seemingly substantial complaint about effective assistance of counsel, the district court should conduct a hearing to determine the validity of defendant's request for substitution of counsel. Enright, 758 P.2d at 782. Subsequently, upon a proper showing that failure to replace appointed counsel would substantially impair or deny the right to assistance of counsel, the district court should substitute appointed counsel. State v. Long (1983), 206 Mont. 40, 44, 669 P.2d 1068, 1071; Enrisht, 758 P.2d at 782.

It is within the discretion of the district court to consider requests to appoint new counsel and the court's determination will be sustained absent an abuse of discretion. State v. Morrison (1993), 257 Mont. 282, 284, 848 P.2d 514, 516; Long, 669 P.2d at 1071.

In Enright, we held that the district court's failure to consider Enright's "seemingly substantial complaints" regarding the effectiveness of counsel was reversible error. Enright, 750 P.2d

10

at 782. If a district court does not address a defendant's complaints regarding effectiveness of counsel, the court may place a defendant in the untenable position of choosing between proceeding with ineffective counsel or proceeding pro se: "Such a set of options is in essence no choice at all." Enright, 758 P.2d at 782. In the instant case, the District Court did not place Craig in such a position.

Craig's first attempt to remove McGee as counsel was properly denied by the court. In response to Craig's motion to remove McGee as counsel, the court found that Craig had failed to allege any facts in support of his motion that would entitle him to relief, as required by § 46-13-101(4), MCA. Since Craig's motion failed to raise a seemingly substantial complaint about McGee's performance, no hearing on the motion was required.

Subsequently, McGee informed the court that Craig refused to cooperate in his defense and the court conducted a hearing to give Craig the opportunity to present his request for substitution of counsel. In support of his position, Craig stated that there was "no communication between me and my public defender." In addition, he alleged that: McGee refused to move for either discovery or change of venue; McGee failed to interview a witness and failed to suppress evidence; McGee advised him to enter a plea agreement; and, McGee had seen him only one time.

In a similar situation where a defendant refused to cooperate and communicate with his appointed counsel and later claimed he had been denied assistance of counsel, we held that "[l]ack of

11

communication between defendant and defense counsel is not of itself basis for reversal on grounds of ineffective assistance of counsel " Long, 669 P.2d at 1072. In cases where the defendant refuses to cooperate in his own defense, we apply the general rule that "a party who participates in or contributes to an error cannot complain of it." Long, 669 P.2d at 1072 (quoting State v. Lopez (1980), 185 Mont. 187, 193, 605 P.2d 178, 181). Thus, a defendant who refuses to cooperate in his own defense cannot complain of ineffective assistance of counsel. State v. Strandberg (1986), 223 Mont. 132, 136, 724 P.2d 710, 713; Long, 669 P.2d at 1072; State v. Miller (1977), 173 Mont. 453, 457, 568 P.2d 130, 132-33.

At the substitution of counsel hearing, the deputy county attorney and McGee responded to Craig's allegations. Regarding Craig's assertion that McGee should move to suppress evidence, specifically a jacket seized from Craig's room at the Butte Pre-Release Center, the deputy county attorney explained that as a prison inmate and resident of the Pre-Release Center, Craig did not have an expectation of privacy to prevent a search. Additionally, Craig signed a document consenting to searches as a provision of his discharge to the Pre-Release Center. McGee had told Craig that filing a motion to suppress the admission of the jacket would be frivolous and would be rejected by the court.

As to the witness Craig believed should be interviewed on his behalf, McGee pointed out that she had already given a statement to the police department which included the facts that Craig felt were important. Regarding discovery, the deputy county attorney

12

responded that pursuant to the State's open file policy, McGee had been given the entire investigative file. Regarding McGee's visits with Craig, McGee testified that he had met with Craig at the county jail and also for an extensive visit at the State Prison. McGee stated that he discussed with Craig everything in his file and went over the strong and weak points of the case including the physical evidence.

Craig's other allegations were likewise explained and countered by the deputy county attorney and McGee, resulting in the District Court's finding that McGee was providing effective assistance of counsel. Considering the court's inquiry into Craig's claims of ineffective counsel and Craig's lack of cooperation with counsel, we hold that the District Court did not abuse its discretion and, therefore, was correct in refusing to substitute counsel.

2. Did the District Court deny Craig his constitutional right to the assistance of counsel by refusing to substitute his court-appointed attorney and thereby giving Craig the option of proceeding to trial with court-appointed counsel or appearing pro se?

When the District Court correctly denied Craig's request to substitute appointed counsel, Craig was left with the choice of: (1) continuing with appointed counsel, or (2) having his counsel dismissed and proceeding on his own, pro se. Pepperling, 582 P.2d at 346; State v. Lange (1987), 226 Mont. 9, 13, 733 P.2d 846, 849; Enright, 758 P.2d 781-82. He chose neither.

The Sixth Amendment of the United States Constitution has been interpreted to include a defendant's right to represent himself,

13

pro se. Faretta v. California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. Article II, Section 24 of the Montana Constitution also provides defendants the right to proceed pro se. Colt, 843 P.2d at 749; Langford, 882 P.2d at 492. Pursuant to § 46-8-102, MCA, a defendant may waive the right to counsel when the court ascertains that the waiver is made knowingly, voluntarily, and intelligently. In Langford, we specifically adopted the additional criterion that the request to represent oneself must be unequivocal. Langford, 882 P.2d at 492.

In the instant case, we agree with Craig that he did not unequivocally request permission to proceed pro se. Craig requested a change of counsel, which was correctly denied. We decline to adopt the State's position that Craig's rejection of McGee's representation constituted an unequivocal request to proceed pro se and a valid waiver of his right to counsel. Craig's situation does not meet the unequivocal request standard established by Langford, 882 P.2d 490.

Craig seeks to fault the District Court for failing to advise him of the dangers inherent in proceeding without counsel. This argument is disingenuous. Obviously any such advice would have made no difference to Craig's state of mind or the outcome of the proceeding since Craig made it abundantly clear that he was not opting to proceed pro se. Rather, his ploy was to circumvent the court's adverse ruling on his motion to remove McGee and force appointment of new counsel. Craig did not seek permission to proceed pro se. He consistently and repeatedly reiterated that he

14

was not qualified to conduct voir dire, cross-examine witnesses or present a defense and, in fact, he was not representing himself. His candid admissions of his own shortcomings relative to experienced counsel suggest that he was well aware of the advantages of representation by counsel. Thus, despite any inadequacies in the District Court's inquiry, Craig understood the importance of counsel and the dangers and disadvantages of proceeding without counsel or refusing to cooperate with court-appointed counsel. United States v. Sandles (7th Cir. 1994), 23 F.3d 1121, 1128.

The court did not leave Craig without counsel. On the contrary, it clearly insisted on leaving McGee in as counsel. The District Court continually referred to McGee as Craig's court-appointed attorney: "This is your court-appointed attorney. YOU can use him if you wish."

A defendant may waive his right to counsel altogether. Faretta, 422 U.S. 806. Accordingly, "at some point a criminal defendant can be deemed to have waived to a certain extent his constitutional right to effective assistance by virtue of his unreasonable refusal to communicate with his attorney." Thomas v. Wainwright (11th Cir. 1985), 767 F.2d 738, 743, cert. denied, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986). The Thomas court stated that a "persistent unreasonable demand for dismissal of counsel [is] the functional equivalent of a knowing and voluntary waiver of counsel." Thomas, 767 F.2d at 743 (citing United States v. Moore (5th Cir. 1983), 706 F.2d 538, 540, cert. denied, 464 U.S.

859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983)). In _Thomas,_ the Eleventh Circuit found that Thomas had unreasonably chosen to remain silent and had refused to communicate with his counsel or the court, yet this behavior did not establish that his attorney failed to provide reasonably effective assistance of counsel. _Thomas,_ 767 F.2d at 744.

In the present case, Craig was provided with counsel. With a clear understanding of the dangers of proceeding without counsel, Craig, instead of cooperating with his appointed counsel, chose to present no defense. Craig's choice to present no defense, like Thomas' choice to remain silent, effectively waived any right to more effective counsel than was possible under the circumstances. _Thomas,_ 767 F.2d at 743. All the court can do is appoint competent counsel. Whether that counsel is effective depends to a great extent upon whether the defendant cooperates with counsel. If the defendant chooses to hamstring the counsel through lack of cooperation, the counsel's effectiveness will, of course, be compromised accordingly.

In refusing to cooperate with his appointed counsel and, at the same time insisting that he was not asking to proceed pro se, Craig was attempting to force the appointment of new counsel. This Court cannot countenance such dilatory and manipulative tactics at the expense of the efficient administration of justice. In United States v. Kelm (9th Cir. 1987), 827 F.2d 1319, defendant Kelm refused to accept an appointed attorney and also refused to waive his right to counsel, saying that he wished to hire counsel of his

16

own choosing. Despite Kelm's failure to appear at hearings concerning his right to counsel, the court granted three continuances in order for him to obtain counsel. The court refused to grant any further continuances and, as a result, Kelm was left without counsel at trial. Kelm argued that the court failed to advise him regarding his right to counsel and that any waiver of that right was therefore not knowing and intelligent. The Ninth Circuit held that, reading the record as a whole, it was fair to conclude that Kelm understood the dangers and disadvantages of self-representation. "He knew he was entitled to counsel, yet the record establishes that he elected to defend himself with his 'eyes open.'" Kelm, 827 F.2d at 1322. The court noted that courts must be wary against the "right to counsel" being used as a ploy to gain time or effect delay. Kelm, 827 F.2d at 1322 (citing United States v. Lustig (9th Cir. 1977), 555 F.2d 737, 744, cert. denied, 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978)). The Ninth Circuit concluded that Kelm was manipulating his constitutional right to counsel in an effort to effect delay and that this tactic resulted in a waiver of his right to counsel of his choice.

Where a defendant's conduct is "dilatory and hinders the efficient administration of justice," a court may deny a continuance even if it results in the defendant's being unrepresented at trial. United States v. Leavitt (9th Cir. 1979), 608 F.2d 1290, 1293. Like Kelm, Craig manipulated his right to counsel in an effort to force appointment of new counsel despite

17

the existence of no seemingly substantial basis for such a replacement.

Craig contends that he was not manipulative because he did not seek appointment of a particular counsel and did not seek continuances or delays. However, Craig's tactic of asserting his right to counsel while rejecting McGee presented the court with a Hobson's choice: either you give me counsel to my liking, or I will refuse to cooperate with the court-appointed counsel and then argue denial of my Sixth Amendment rights. The court provided Craig with competent counsel. The fact that McGee's effectiveness as counsel was compromised by Craig's lack of cooperation was Craig's own doing. Long, 669 P.2d at 1072.

Craig's decision to reject McGee's assistance did not, as the State argues, leave him only one option--to proceed pro se. Instead, he chose to neither cooperate with his court-appointed counsel, nor to present any defense. The inevitable result of his "no defense" strategy was a one-sided, prosecutorial presentation to the jury. We hold that the District Court did not deny Craig his constitutional right to effective assistance of counsel.

3. Did the District Court deny Craig his right to represent himself by permitting "standby" counsel to become involved in the defense?

Craig alleges that by allowing McGee to participate in the trial as standby counsel, the District Court destroyed "the jury's perception that the defendant is representing himself." McKaskle v. Wiggins (1984), 465 U.S. 168, 177, 104 S.Ct. 944, 951, 779

18

L.Ed.2d 122. This claim fails because we have held that Craig did not unequivocally assert his right to represent himself. Throughout the trial, neither the court, the prosecutor, McGee himself, nor Craig ever referred to McGee as standby counsel. Instead he was referred to by the court and the prosecutor as Craig's attorney. McGee performed an extensive voir dire resulting in one juror excusing herself because she was not sure she could be fair to Craig. Even after voir dire and the State's opening statement, when Craig stated McGee was not his attorney as far as he was concerned, the court continued to view McGee as the attorney available for Craig's defense.

The option of proceeding pro se was left open to Craig throughout the trial. However, Craig did not seek permission to proceed pro se. Thus, the jury did not have the perception that Craig was representing himself. After the State's opening statement, McGee's participation in the trial was very limited due to Craig's non-cooperation. This may have left the jury confused as to why Craig would choose to block his attorney's assistance, but at no point were the jurors led to believe by the court, Craig, McGee, or the State that Craig was proceeding pro se.

Outside the presence of the jury, Judge Sullivan, the prosecutor, and McGee, with Craig present, settled the jury instructions. Throughout this procedure Craig did not participate nor did he object to McGee's participation. Judge Sullivan continually consulted with McGee but acknowledged that McGee's participation was limited by Craig's wishes. Judge Sullivan

19

stated: "He's calling the shots." This did not signify that Craig was proceeding pro se, but that, as for all clients, Craig determined his own defense. Craig did not assert his right to proceed pro se and he did not object to McGee's limited participation in the trial. Furthermore, Craig does not suggest that McGee's participation in any way conflicted with his "actual control over the case he chooses to present to the jury." McKaskle, 465 U.S. at 178. Since the jury was never given the impression that Craig was proceeding pro se, it cannot be said that McGee's participation "destroyed the jury's perception that the defendant is representing himself." McKaskle, 465 U.S. at 177. Accordingly, we hold that the District Court did not deny Craig's right to represent himself.

In sum, our holding in this case is narrowly tailored to the unique situation Craig presents. By not cooperating with his court-appointed attorney and not proceeding pro se, Craig attempted to manipulate the court into appointing new counsel. However, as the District Court found, McGee did provide effective assistance of counsel. It was only Craig's noncooperation that compromised McGee's representation. Although Craig's tactics resulted in a self-defeating and unwise defense, we cannot countenance manipulation of the Sixth Amendment in order to sabotage the criminal justice system.

4.  Did the District Court err in instructing the jury as to "admissions" and "confessions?"

Craig asserts that the District Court improperly instructed the jury on admissions and confessions by giving Jury Instruction No. 7. Jury Instruction No. 7 states:

A statement made by a defendant other than at this trial may be an admission or a confession.

A confession, as applied in criminal law, is a statement by a person made after the offense was committed that he committed or participated in the commission of a crime. An admission is a statement made by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with proof of other facts, to prove his guilt. A conviction cannot be based on an admission or confession alone.

The circumstances under which the statement was made may be considered in determining its credibility or weight. You are the exclusive judges as to whether an admission or a confession was made by the defendant, and if so, whether such statement is true in whole or in part. If you should find that any such statement is entirely untrue, you must reject it. If you find it is true in part, you may consider that part which you find to be true.

Evidence of an oral admission or oral confession of the defendant should be viewed with caution.

Craig alleges that he made neither a confession, nor an admission. Craig's statements in question were made to Detective Green after the robbery. When questioned by Detective Green about the robbery, Craig stated: "I want it to be known that I did not have a gun." He also told Detective Green that he could not "make it" in the outside world.

In State v. Thompson, we stated: "An 'admission' is defined as an avowal or acknowledgement of a fact or of circumstances from which, together with other facts, guilt may be inferred . An admission does not acknowledge guilt; rather, it tends to establish guilt." State v. Thompson (1993), 263 Mont. 17, 25, 865 P.2d 1125,

21

1130 (citing State v. Goltz (1982), 197 Mont. 361, 363, 642 P.2d 1079, 1084 (other citations omitted) ) Thompson argued that the court erred in characterizing statements he made at his omnibus hearing as admissions and erred in charging the jury with the same instruction that was used in the present case. This Court concluded that Thompson's statement was inconsistent with his theory of innocence and that the district court was correct in instructing the jury on possible admissions.

In the present case, the District Court correctly presented the jury with the instruction concerning admissions and confessions. Although Craig questions whether his statements were admissions or confessions, the jury may have construed them as inconsistent with innocence and thus treated them as admissions. Accordingly, the court properly apprised the jury of the difference between an admission and a confession; instructed the jury that a conviction cannot be based on an admission or confession alone; informed the jury that it alone was to determine if an admission had been made; and advised the jury that an admission should be viewed with caution. This instruction was to Craig's benefit. It ensured that the jury did not overvalue Craig's statements. This Court will uphold a district court if the instructions given, viewed as a whole, fully and fairly instruct the jury on the law applicable to the case. Thompson, 865 P.2d at 1131 (citing State v. Lundblade (1981), 191 Mont. 526, 529, 625 P.2d 545, 548). The instruction given by the District Court is a correct statement of

22

the law, therefore, we hold that the District Court did not err in instructing the jury on the law applicable to admissions.

Affirmed.

_____
                                    Justice

We concur:

_____
                Chief Justice

_____

_____
                Justices

23