JUSTICE WARNER
dissents.
¶33 I dissent. I would affirm the judgment of the District Court.
¶34 In ¶¶ 19, 23 and 24 the Court pays lip service to the rules stated at ¶% 4, 9, and 10, in Gallagher II: that it is within the sound discretion of the district court to rule on requests for appointment of new counsel, and that an abuse of discretion has only occurred if the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. In my view, the Court does not fairly construe the record and inexpiably glosses over the trial judge’s findings of fact that Hendershot’s complaints about his lawyers were not credible and that he concocted his alleged problems with McLaverty and Montgomery to frustrate the prosecution of this case.
¶35 In the letter to the judge from Hendershot, dated July 17, 2003, *174 which is in the record and relied on by the Court, Hendershot states that he met with Montgomery on July 16, and they discussed the upcoming revocation hearing. Hendershot made no objection to Montgomery, rather than McLaverty, appearing as his counsel for the probation revocation hearing.
¶36 At the probation revocation hearing, noted in ¶ 4, Denise was called as a witness. She made it clear that she did not want to testify against Hendershot and only did so because the State required her attendance and testimony by subpoena. However, she did graphically describe the brutal beating she suffered at Hendershot’s hands. Denise testified that Hendershot: beat her about her head, face, chest, abdomen and back, at times with a hardbound book; choked her almost to the point of unconsciousness, leaving red marks on her neck; may have punctured one of her eardrums; and fractured one of her ribs. Denise confirmed that the pictures introduced by the State depicted the numerous marks, scrapes and bruises inflicted by Hendershot.
¶37 After the presentations of counsel at the probation revocation hearing, the District Court asked Hendershot if he had anything he would like to say, to which he replied, “No, thank you.”
¶38 In the letter Hendershot wrote to the District Court mentioned in ¶ 6, he did claim inadequate representation by counsel at the probation revocation hearing. His complaints were that: Montgomery told him not to say anything when he wanted to apologize to Denise and the Court; Montgomery asked no questions of the witnesses; and Montgomery did not mention that he had a mental disorder which “to a large degree” caused the altercation between himself and Denise. Hendershot requested a new hearing or a sentence change. However, he made no complaints about MeLaverty’s representation in the present case.
¶39 Montgomery’s decision not to ask questions of Denise at the probation revocation hearing was wise. The State had photographs of the severe injuries inflicted on Denise, which proved her testimony was accurate. There was no viable defense to the allegations at that time.
¶40 In the sentencing phase of a proceeding it could well be prudent to show remorse. However, in this instance Hendershot had recently pled not guilty to a charge of aggravated assault for causing Denise’s injuries. It would be, to say the least, difficult at a later trial to claim he had not hurt her if he had apologized on the record for doing so. Likewise, it would be inconsistent with denying that he had brutally beat Denise if Hendershot was to blame a purported mental illness for *175 administering that same beating. Montgomery’s strategy in advising Hendershot to remain silent at the probation revocation hearing cannot be faulted in considering this case. These things are obvious. They support the District Court’s conclusion that Hendershot’s complaints about his lawyer were not credible. Certainly, the District Court’s finding was not arbitrary, and did not exceed the bounds of reason.
¶41 Hendershot’s delay in requesting new counsel, along with his refusal to consent to a delay of that trial, lends strong support to the District Court’s conclusion that his complaints about his lawyers were for the purpose of frustrating the prosecution. The conclusion of the District Court that it was Hendershot, not his lawyers, that was the cause of the problem, did not exceed the bounds of reason.
¶42 When asked if he wanted to respond to Hendershot’s allegations of ineffectiveness, Montgomery, on behalf of McLaverty, replied:
Not formally, Your Honor, other than to say that as a public official - as a public servant we always try to give the best representation we can to our clients. We speak with them. A lot of times they don’t hear the type of result they would like to hear.
In this case, while I disagree completely with Mr. Hendershot’s characterizations about my performance, about my office’s performance, I have spoken with Denise, the alleged victim in this case; and I agree, much like Mr. Corn, that Denise has a lot of problems.
¶43 It was after this that Montgomery said that he believed that communication between him, his office, and Hendershot had broken down. It was Montgomery, not Hendershot, who used the magic word, “communication.” Notably, no specifics of how communication was lacking, or why representation could not be effectively continued were offered by either Montgomery or Hendershot.
¶44 Immediately after Montgomery’s statement, the District Court also disagreed with Hendershot’s characterizations about the performance of his lawyers and found that his complaints were not credible, as stated in ¶ 16 above.
¶45 The Court also acknowledges, at ¶ 17, that Hendershot wrote a letter to the District Court requesting a continuance, which the judge received the morning of trial. The facts surrounding this episode further bolster the District Court’s conclusion that Hendershot’s complaints about his lawyers were not credible.
¶46 On the morning the trial commenced, Hendershot, in accord with his letter, orally asked for a continuance because he had retained a *176 new lawyer. He affirmatively represented to the court that he had retained another attorney, Mr. Eschenbacher. However, Eschenbacher had made no appearance.
¶47 Deputy County Attorney William E. Fulbright (Fulbright), appearing for the State, argued against a continuance, noting the State was ready for trial and that if Eschenbacher had truly been retained he would have contacted Fulbright. Fulbright also brought to the court’s attention that Hendershot’s right to a speedy trial was a concern. Then, Hendershot said that Eschenbacher advised him to waive his right to a speedy trial, and he was prepared to do so.
¶48 The District Judge stated:
Well, I’m of the opinion that you’re just attempting to manipulate the Court some more, and this is untimely and I think your goal here today is just not to go to trial. And we do have a large number of jurors that have come for this case and the State is ready to proceed and has its witnesses, and I’m sure Mr. McLaverty is prepared to go, and I don’t see any good cause to delay this trial again. If we do, it just raises havoc in our calendar and delays other trials, and we’re just not going to go there.
¶49 The trial then commenced. After the end of the first day of trial, Eschenbacher appeared before the District Court and informed the court, directly contrary to Hendershot’s representation, that he had not been retained as counsel for Hendershot in this case. This portion of the record further supports the District Court’s conclusion that Hendershot is not a credible witness.
¶50 Hendershot did complain about his lawyers. However, the record contains substantial evidence supporting the District Court’s conclusion that the reason Hendershot wanted new counsel was not because he and McLaverty could not communicate, or because McLaverty had not represented him properly. Rather, a fair view of the record supports the determination of the District Court that Hendershot complained about his attorney because he wanted a delay so that he could possibly secure a dismissal of the charge for lack of a speedy trial. When the credibility of a witness is at issue this Court should not substitute its judgment for that of the District Court. Burns v. Plum Creek Timber Co., 268 Mont. 82, 84, 885 P.2d 508, 509 (1994); State v. Gallagher, 2001 MT 39, ¶ 19, 304 Mont. 215, ¶ 19, 19 P.3d 817, ¶ 19 (Gallagher I).
¶51 Hendershot should not be able to use bogus complaints about his lawyers to secure a reversal of his conviction. This Court cannot countenance manipulative tactics at the expense of the efficient *177 administration of justice. State v. Craig, 274 Mont. 140, 153, 906 P.2d 683, 691 (1995). Under these circumstances, the District Court did not abuse its discretion in denying Hendershot’s motion for appointment of different counsel. What the Court does here is ignore the substance of Gallagher II and substitute its findings of fact for those of the District Court. I dissent.
JUSTICE RICE and DISTRICT COURT JUDGE HARKIN join in the foregoing dissent.