CHIEF JUSTICE McGRATH
delivered the Opinion of the Court.
¶1 This appeal arises out of four misdemeanor criminal cases filed against Michelle Renee Fogarty in the Missoula Municipal Court. The cases were heard in bench trials, all held on the same day, at which Fogarty represented herself. Fogarty appealed her convictions to the Fourth Judicial District Court, Missoula County, on grounds that she had been denied her constitutional right to counsel. The District Court generally affirmed the convictions, and Fogarty now appeals to this Court. We affirm.
BACKGROUND
¶2 The first of the four cases here on appeal was an October 2010 charge of no proof of motor vehicle insurance. An attorney from the Missoula Office of Public Defender (OPD) was appointed to represent Fogarty. Although she was represented by counsel, Fogarty filed several rambling pro se documents in which she, among other things, complained that her counsel was “accusatory and bullying” and was not properly representing her. At a March 9, 2011, status hearing, Fogarty told the court she had defended herself before, in a proceeding in Minnesota, she had done a better job than the public defender, and she would be proceeding pro se. Following a dialogue about Fogarty’s competence, Fogarty told the court she would not cooperate with a mental health evaluation to determine if she was competent to proceed to trial. “Being not trained as an attorney does not make you ... have mental disease.” The court appointed Robin Ammons as standby counsel to assist her, but Fogarty declared she would not be asking Ammons for any help. Later, another contract public defender (Sandefur) was appointed to represent Fogarty, but he subsequently withdrew on grounds of a breakdown in the attorney-client relationship, and yet another contract public defender took over. That attorney was allowed to withdraw upon his motion, filed at Fogarty’s *515 request.
¶3 In the meantime, in November of 2010, Fogarty was charged with resisting arrest and violating a privacy in communication statute by electronically using profane/obscene language with the purpose to harass. OPD filed a notice of appearance, followed by notice of appearance by conflict counsel contracting with OPD. Again, although Fogarty was represented by counsel, she filed voluminous rambling handwritten documents, including complaints that her counsel was threatening her, and a request to meet with the judge “regarding some appropriate legal representation.”
¶4 Also in the meantime, Fogarty was charged with criminal contempt and disorderly conduct during a March 9, 2011, court appearance. A regional deputy public defender entered notices of appearances of two private attorneys, in succession, who contracted with OPD to represent Fogarty. The first of those two contract attorneys advised the court he had concerns about Fogarty’s ability to assist in her defense and was in the process of investigating this issue. He later was allowed to withdraw on grounds of a breakdown in the attorney-client relationship. The next contract attorney (Foley) moved to withdraw on grounds that Fogarty had created a conflict of interest by making allegations that Foley and her law firm had acted unethically. Attorney Birdsong entered an appearance but later moved to withdraw on grounds that Fogarty had told him she no longer wanted him to represent her.
¶5 The fourth group of charges involved in this appeal arose in August of 2011, when Fogarty was charged with disorderly conduct and resisting arrest in a Missoula restaurant. In that case, the court granted two attorneys’ motions to be allowed to withdraw-the first, at F ogarty’s request, and the second, due to conflicts of interest that arose after Fogarty made complaints about the attorney. At that point, the court ordered that any further filings should be sent to Fogarty personally.
¶6 On November 3, 2011, the Missoula regional OPD office filed notice that Lisa Kauffman, a contract attorney with OPD, would be appearing for Fogarty in the first three of the above four cases. Then, on November 7, 2011, Fogarty appeared in the Missoula Municipal Court for a preliminary hearing on all four cases, held before retired District Judge Harkin. Kauffman did not appear. The court asked Fogarty if she had a new attorney, and Fogarty replied she felt she should represent herself at her trials, all four of which had been scheduled for December 22,2011. At that point, the following exchange occurred:
*516 Judge: You want to represent yourself?
Fogarty: Yeah.
Judge: Okay, that’s fine. You have the right to do that and so all we need now is for you to sign this little form here. And this is the form that will tell you what day you should be getting yourFogarty: Here?
Judge: Yeah. Here’s your copy.
Fogarty: Okay.
Judge: And that’ll be-the day you should get your notice of the trial is December 16.
Judge Harkin then went on to make sure Fogarty had information on all the evidence the State would be using against her. Two days later, Kauffman moved to withdraw in the three cases in which her appearances had been entered, on grounds that OPD had instructed her to do so and that she had received notice from the Clerk of the Municipal Court that Fogarty had indicated she wanted to proceed pro se.
¶7 On December 22,2011, just before the first of the four bench trials began, the Municipal Court judge reviewed with Fogarty the possible penalties for the offenses charged. The court then asked Fogarty whether she had previous experience in trials. Fogarty responded at some length on that and several related subjects, including describing the Minnesota case in which she stated she had been forced to plead guilty. She also complained that her right to speedy trial has been violated in the matters pending before the Municipal Court. Fogarty stated, ‘1 feel I should have an attorney that will effectively represent me, but that has not happened.” The court responded:
[O]ne of the things is you can’t keep firing your lawyers. That’s the problem because that’s pretty much a rejection of being represented by an attorney.... What I’m only inquiring about is I want to make sure that you’re capable of representing yourself. You seem to be very capable of that. You know the penalties involved here. You’ve had experience with the legal system. You are an articulate, thinking person and I think you can represent yourself.
Fogarty then replied that she did not want to “go to jail for a year based on all these cops coming around the courtroom here and nobody else present. I’m a little concerned.” The judge advised her that the officers in the courtroom were witnesses for the trials. After Fogarty *517 responded with complaints about corruption of police officers, the court stated, T determine that you are able to represent yourself today.” [1]
¶8 Fogarty pled guilty to driving without insurance and the court fined her $250 on that charge. Following the bench trials, the court found Fogarty guilty on all of the remaining charges. It sentenced her to 10 days in jail for disorderly conduct; 180 days in jail, all suspended, for criminal contempt; 10 days in jail for disorderly conduct and 180 days in jail for resisting arrest, with 180 days suspended; 180 days in jail, suspended with conditions, for violation of privacy in communications; and 180 days in jail, suspended, for resisting arrest.
¶9 On appeal, the Fourth Judicial District Court stated ‘It is clear from the record that [Fogarty] is a disturbed person who has a great deal of difficulty dealing with other people.” The court set forth the histories of the various cases before it on appeal. Relying on case law regarding defendants who had not unequivocally requested to proceed pro se or waived their right to counsel, but who were found to have effectively waived their right to counsel by their dilatory conduct hindering the efficient administration of justice, the court determined the Municipal Court had made the appropriate balancing decision between Fogarty’s right to counsel and her Yefus[al] to work with everyone appointed to represent [her].” The court generally affirmed the judgments entered in the Municipal Court. However, it set aside and dismissed Fogarty’s conviction of disorderly conduct during her March 9, 2011, court appearance, on double jeopardy grounds.
STANDARDS OF REVIEW
¶10 Where there is a question of whether a defendant has waived her right to counsel, we will not disturb the district court’s findings “as long as substantial credible evidence exists to support that decision.” State v. Clary, 2012 MT 26, ¶ 12, 364 Mont. 53, 270 P.3d 88. We defer *518 to a trial court’s consideration of a request to appoint new counsel “and the court’s determination will be sustained absent an abuse of discretion.” State v. Craig, 274 Mont. 140, 149, 906 P.2d 683, 688 (1995).
DISCUSSION
¶11 The Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee persons charged with criminal offenses the right to the assistance of counsel. Since Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792 (1963), an indigent defendant in a criminal matter is entitled to have an attorney appointed at public expense. Craig, 274 Mont. at 148, 906 P.2d at 688.
¶12 A defendant may, however, waive the right to counsel, as long as the court determines the waiver is voluntary, knowing, intelligent, and unequivocal. Faretta v. California, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975); §46-8-102, MCA. No particular sort of questioning or inquiry is required before a trial court allows a defendant to represent himself or herself, so long as the court is satisfied that the defendant is “aware of the dangers and disadvantages of self-representation, so that ... ‘he knows what he is doing and his choice is made with eyes open.’ ’’State v. Langford, 267 Mont. 95, 99, 882 P.2d 490, 492 (1994), quoting Faretta, 422 U.S. at 835, 95 S. Ct. at 2541. ‘In applying the Faretta standard, we have repeatedly held that a trial court is not required to advise a defendant specifically of the dangers and disadvantages of self-representation as long as the court makes inquiry of the defendant to the extent it deems necessary to ensure that the defendant’s waiver of counsel is voluntary, knowing, and intelligent.” State v. Insua, 2004 MT 14, ¶ 19, 319 Mont. 254, 84 P.3d 11.
¶13 Further, a defendant’s waiver of the right to counsel must be evaluated in light of the record as a whole. United States v. Gerritsen, 571 F.3d 1001, 1008 (9th Cir. 2009). The reviewing court may look to the circumstances of prior proceedings in the case to determine whether the defendant’s waiver was knowing and voluntary. United States v. Erskine, 355 F.3d 1161, 1170 n.11 (9th Cir. 2004). “Aproperlyconducted Faretta colloquy need not be renewed in subsequent proceedings unless intervening events substantially change the circumstances existing at the time of the initial colloquy.” U.S. v. Hantzis, 625 F.3d 575, 580-81 (9th Cir. 2010).
¶14 In addition, a defendant who does not unequivocally request to proceed pro se and does not expressly waive her right to counsel may effectively do so by failing to cooperate with a court-appointed attorney. Craig, 274 Mont. at 148, 906 P.2d at 688; Hantzis, 625 F.3d *519 at 583. And “[b]are unsupported allegations are insufficient to establish the total lack of communication required to warrant appointment of new counsel.” Robinson v. State, 2010 MT 108, ¶ 22, 356 Mont. 282, 232 P.3d 403.
¶15 In the present case, Fogarty contends the Municipal Court clearly abused its discretion when it made no inquiry at the November 7 hearing about the absence of her newly-appointed attorney, Lisa Kauffman. She further contends that, because the court did not enter a written order allowing Kauffman to withdraw, Kauffman was her attorney of record on December 22, 2011.
¶16 At the outset of the November 7 hearing, Fogarty told the court she wished to proceed pro se. As a result, and given the histories of these cases, any procedural errors by the court in beginning that hearing without Kauffman’s presence and in failing to later enter a written order granting Kauffman’s motion to be allowed to withdraw did not result in any deprivations of Fogarty’s rights.
¶17 Fogarty argues the Municipal Court clearly abused its discretion in finding her capable of representing herself at trial. We disagree. Fogarty had refused to pursue any inquiry into a possible claim that she was mentally incompetent for purposes of defending the charges against her. She told the court she had represented herself in criminal proceedings before, in Minnesota. In discussing the current charges against her, while she tended to ramble into other matters, she also was able to discuss the particulars of the current charges, and certainly seemed to comprehend the possible penalties she faced if convicted. A court cannot deny a request to represent oneself on the basis that the defendant would not do so adequately. State v. Swan, 2000 MT 246, ¶ 18, 301 Mont. 439, 10 P.3d 102.
¶18 Fogarty cites State v. Hass, 2011 MT 296, ¶ 21, 363 Mont. 8, 265 P.3d 1221, for the proposition that it is a violation of a criminal defendant’s constitutional right to counsel for a court to allow the defense attorney to withdraw, without notice to the defendant, and then to proceed to trial without first obtaining from the defendant a waiver of the right to counsel. That is not the sequence of events that occurred in the present case, however.
¶19 The facts of this case are more similar to those in Hantzis. In that case, Hantzis was charged with possession of methamphetamine with intent to distribute. He went back and forth on whether he wanted to be represented by counsel or to proceed pro se, and he personally filed many motions even when he was represented by counsel. The trial court eventually granted Hantzis’s motion to proceed pro se. On appeal, Hantzis argued he had been denied his right to counsel on *520 grounds that the court’s Faretta colloquy with him had been inadequate. The appeals court disagreed, stating that waiver of the right to counsel must be evaluated in light of the record as a whole, and the court may look to the circumstances of prior proceedings in the case to determine whether the defendant’s waiver was knowing and voluntary. Hantzis, 625 F.3d at 580.
¶20 The dissent’s reliance on § 37-61-403, MCA, to support the argument that proper change-of-attorney procedures were not followed here is misplaced. That statute allows for a change of attorney “upon order of the court, upon application of either client or attorney.” That is essentially the procedure that was followed here. At the November 7, 2011, hearing, after Fogarty informed the court that she wanted to represent herself, the court indicated its assent, saying “that is fine.” The judge then had Fogarty sign the preliminary hearing/pre-trial order form, gave her a copy, and advised that she should receive her notice of trial by December 16. Two days later, Fogarty’s latest appointed attorney filed a formal motion to withdraw, indicating she had received a notice from the clerk of court that Fogarty was proceeding pro se.
¶21 Moreover, the dissent’s comments in regard to the individual OPD counsel assigned to Fogarty’s cases assume that courts assign the individual attorneys, rather than OPD as an entity, to represent indigent criminal defendants. That is not the case. As a rule, OPD, not the court, assigns the individual counsel to handle a case. See §47-1-215(2)(b), MCA. The necessity of this for managing OPD’s caseloads, particularly in busy courts of limited jurisdiction, should be obvious. It is clear from the record in this case that the Municipal Court intended OPD to be counsel of record.
¶22 Under the circumstances presented here, we conclude it was within the Municipal Court’s discretionary authority to accept Fogarty’s decisions to represent herself in these matters. Substantial credible evidence from the colloquies at the proceedings in which the court determined Fogarty could represent herself, and also from the prior filings and proceedings in the four actions here on appeal, supports the Municipal Court’s decision to allow Fogarty to represent herself. Fogarty had gone back and forth about whether she wished to represent herself or to rely on counsel to represent her. At hearings held on March 9,2011, November 7,2011, and December 22,2011, she asked to be allowed to do so. Fogarty had gone through several lawyers in each of the cases filed against her as a result of communication problems between herself and the attorneys, or counsels’ conclusions that they must withdraw due to ethical claims Fogarty had made *521 against them. Just before her trials began on December 22, 2011, Fogarty did not dispute the City’s statement that she had fired Kauffman, nor did she disagree with the court’s statement that she had fired all of her attorneys. To the extent that Fogarty did not expressly and unequivocally waive her right to counsel because her decision was inconsistent over time, she effectively did so by failing to cooperate with a series of court-appointed attorneys.
¶23 The Opinion of the District Court is affirmed.
JUSTICES WHEAT, BAKER, MORRIS, COTTER and RICE concur.

 Despite the trial court’s specific determination that Fogarty was capable of representing herself, the dissent asserts that her “mental health issues” or her “compromised mental health” were bases enough to require reversal of the courts’ decisions below. Nothing in the record substantiates that Fogarty was unable to proceed without counsel. Neither party nor any of the prior counsel moved the court for an expert mental evaluation and, as noted, Fogarty specifically rejected the need for an evaluation. As this Court has previously held, even when facing involuntary mental commitment, individuals can nevertheless be fully competent to waive basic fundamental rights. In re R.W.K., 2013 MT 54, 369 Mont. 193, 297 P.3d 318; In re P.A.C., 2013 MT 84, 369 Mont. 407, 298 P.3d 1166. If anything, the record shows that Fogarty was capable of deciding to represent herself.