**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

ANDREW HANTZIS,
            *Defendant-Appellant.*

No. 05-50507

D.C. No.
CR-00-01047-SVW

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
August 31, 2010—Pasadena, California

Filed November 4, 2010

Before: Diarmuid F. O'Scannlain, Ronald M. Gould and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

18233

**COUNSEL**

André Birotte, Jr., United States Attorney, Christine C. Newell, Assistant United States Attorney, Kevin M. Lally, Assistant United States Attorney, Los Angeles, California, Attorneys for the plaintiff-appellee.

Wayne R. Young, Santa Monica, California, Attorney for the defendant-appellant.

**OPINION**

M. SMITH, Circuit Judge:

Defendant-Appellant Andrew Hantzis challenges his conviction and sentence for possessing with the intent to distribute, and distributing, at least fifty grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). He was sentenced to two concurrent terms of 211 months' imprisonment and five years of supervised release and ordered to pay a $4,000,000 fine.

Hantzis argues that he was denied his Sixth Amendment right to counsel because (1) the district court's colloquy was inadequate under *Faretta v. California*, 422 U.S. 806 (1975); (2) the district court did not renew its *Faretta* warnings at a subsequent evidentiary hearing and at sentencing in his case; and (3) he was not appointed counsel at sentencing.

We conclude that the district court conducted an adequate *Faretta* colloquy and that Hantzis knowingly and intelligently

waived his right to counsel. We hold that the district court was not required to engage in additional *Faretta* colloquies at the subsequent evidentiary hearing or at sentencing in Hantzis's case because no significant changes in circumstance occurred. Finally, we hold that the district court did not err in declining to appoint new counsel for counsel for Hantzis at his sentencing. We affirm.

Other claims of error asserted by Hantzis in his appeal are addressed in a memorandum disposition filed contemporaneously with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1999, California state authorities arrested and charged Hantzis with possession of methamphetamine for sale. State authorities arrested Hantzis for a second time in 2000, while he was out of custody on bond for the first state charge. On the occasion of his second arrest, Hantzis was charged with manufacturing methamphetamine, possessing methamphetamine for sale, and possessing precursor chemicals with the intent to manufacture methamphetamine.

While incarcerated at the Los Angeles County Jail, awaiting release on bond concerning the second methamphetamine trafficking charge, Hantzis befriended a prison informant, one Gary Didio. Didio gave Hantzis the phone number of a purported drug trafficker named "Joe," who was actually an undercover detective named Marc Bender. After his release on bail, Hantzis contacted Bender and sold him approximately one pound of methamphetamine. The two made plans for another, larger transaction, but their negotiations eventually failed. Hantzis was ultimately arrested for possessing for sale an additional pound of methamphetamine.

In October 2001, following a four-day trial, a federal jury found Hantzis guilty of distributing and possessing with intent to distribute at least fifty grams of methamphetamine, in vio-

lation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). Hantzis was sentenced on June 28, 2005, over three-and-a-half years after his conviction.

## A.   Representation by counsel and the *Faretta* colloquy

The district court appointed attorney A.C. to represent Hantzis at trial. Following trial, Hantzis hired, or was appointed, four different attorneys, including A.C. In January 2005, the district court relieved A.C. for the second time, and Hantzis began representing himself pro se.

Even during the time he was still represented by counsel, Hantzis filed multiple pro se motions with the district court, including: (1) a motion to admit newly discovered evidence; (2) a motion for interlocutory appeal; (3) a motion to set aside the judgment; (4) a petition for habeas corpus; (5) a petition for writ of mandamus; and (6) a motion to dismiss. Additionally, in 2003–2004, through an attorney, Hantzis sought to challenge the drug evidence presented at trial by having his own experts conduct tests. At trial, defense counsel did not cross-examine the government's drug expert or present experts on Hantzis's behalf.

The district court scheduled a hearing on Hantzis's pro se motions, but prior to the hearing, Hantzis filed an additional motion seeking a continuance and notifying the court that he wished to represent himself pro se. At the hearing, which Hantzis's then-attorney, A.C., did not attend, Hantzis told the court that A.C. was no longer his attorney. The following colloquy ensued:

> Court:                And at this point we can't go on appointing lawyers foryou. Do you intend to respond to the— unless you want to hire a lawyer. Do you want to hire a lawyer?

| Hantzis: | Not at this time. I'm indigent, your Honor. |
|---|---|
| Court: | Do you want to represent yourself? |
| Hantzis: | Yes, your Honor. |
| Court: | You know the hazards of representing yourself, do younot? |
| Hantzis: | Yes, your Honor. |
| Court: | You're not trained in the law. These issues could veryseriously affect whether or not the conviction remains, what your sentence will be, and the fact that you represent yourself puts you at a severe disadvantagewhich may hurt you down the road. Do you understand that? |
| Hantzis: | Yes, your Honor. |
| Court: | Now, we've got to bring this to a close. Three years ofmotions without sentence is almost unprecedented. . . . |

After some discussion of the motions, the court again confirmed that Hantzis wanted to represent himself:

| Court: | Do you want a public defender, or do you want torepresent yourself? |
|---|---|
| Hantzis: | Your Honor, I want to represent myself to go pro se. |

| Court: | All right. Then I'll allow you to do that, having told youabout the serious hazards of representing yourself. |
|---|---|

The judge then issued a bench warrant for attorney A.C., who had failed to appear for the hearing.

The next day, A.C. appeared before the court and stated that Hantzis wanted A.C. to continue representing him. Soon thereafter, but before the court took any further action in the case, Hantzis filed a request reiterating his intention to proceed pro se. The district court scheduled another hearing on January 4, 2005, to confirm whether Hantzis wanted to proceed pro se. Hantzis began the proceeding with "Good morning, your Honor. Andrew Hantzis, representing myself," and then restated that he wanted to remain pro se.

After the district court granted his request to proceed pro se, Hantzis filed numerous additional motions. His series of pro se motions, which he prepared and filed both before and after he was represented by counsel, collectively attacked the legitimacy of the investigation, the prosecution, the trial, and the conviction. The district court held an evidentiary hearing on all of Hantzis's motions on June 15, 2005, and issued a 64-page written order denying them. The district court also ruled that the drug evidence findings made by the government's expert and Hantzis's expert were not significantly different from each other.

## B.   Sentencing

In September 2003, while represented by counsel, Hantzis filed a pro se sentencing memorandum addressing each of the issues raised in the Presentence Report (PSR). Among other arguments, Hantzis disputed the drug evidence based on his expert's testing. Hantzis also challenged the proposed Guidelines sentence. The government filed a response to Hantzis's

sentencing memorandum on June 24, 2005, agreeing with the PSR's sentencing calculations and requesting a high-end sentence of 235 months. The government contended that the high-end sentence was justified by Hantzis's purported perjury and lack of remorse, and because he had committed the crimes of conviction while he was out of prison on bail in two other methamphetamine-trafficking cases.

At the sentencing hearing, Hantzis made a lengthy statement to the court, arguing his reasons for challenging the investigation and trial, and for questioning the competency of his previous counsel. As part of his statement, Hantzis accused the government and the court of "major fraud," collusion, and forgery, and argued that all of his attorneys were incompetent. Hantzis then contended:

> So, your Honor, there's no way that I can get sentenced because I don't even know what charges have been brought against me. And I need the assistance of competent counsel who is not going to be hindered by the government, that they have all been hindered all the way from the beginning. . . .

When imposing Hantzis's sentence, the district court evaluated the 18 U.S.C. § 3553(a) factors, and then stated that "while the Court recognizes it isn't bound by the [G]uidelines, [it] nevertheless finds that the [G]uidelines do provide a relevant and appropriate measure of the sentence." The district court sentenced Hantzis to a mid-range term of 211 months in prison and five years of supervised release.[1] The court also imposed a fine of $4,000,000.

---

[1]Hantzis's Guidelines range was 188 to 235 months, based on a base offense level of 34 and a two-level enhancement for obstruction.

## DISCUSSION

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Whether a defendant knowingly and intelligently waived his right to counsel is a mixed question of law and fact, reviewed de novo. *United States v. Erskine*, 355 F.3d 1161, 1166 (9th Cir. 2004).

Hantzis argues that he was denied his Sixth Amendment right to counsel because the district court (1) gave an inadequate *Faretta* colloquy; (2) failed to conduct a new *Faretta* hearing at a subsequent evidentiary hearing in the case and at sentencing; and (3) did not appoint counsel at sentencing, as allegedly requested by the defendant. Hantzis is mistaken.

## A.   The district court's *Faretta* colloquy was adequate

Hantzis asserts that his waiver was not knowing and intelligent because the district court's *Faretta* colloquy was deficient. We disagree and hold that the district court conducted an adequate *Faretta* colloquy.

**[1]** Although the district court need not follow a particular script when conducting a *Faretta* hearing, it must ensure that the defendant "understands 1) the nature of the charges against him, 2) the possible penalties, and 3) the dangers and disadvantages of self-representation." *Erskine*, 355 F.3d at 1167 (internal quotation marks and citation omitted). A waiver is knowing and intelligent if the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

**[2]** In this case, the court conducted the required colloquy to ascertain that Hantzis knew the hazards of representing

himself, and Hantzis acknowledged that he understood. Then the court counseled Hantzis:

> You're not trained in the law. These issues could very seriously affect whether or not the conviction remains, what your sentence will be, and the fact that you represent yourself puts you at a severe disadvantage which may hurt you down the road. Do you understand that?

Hantzis responded that he did. The court then explained at length (running eight pages of transcript) what Hantzis should expect from the upcoming proceedings. At the end of the colloquy, the court again inquired if Hantzis wanted new counsel, confirmed that he wanted to proceed pro se, and granted Hantzis's motion.

In addition to what was said at the *Faretta* colloquy, the record as a whole further confirms that Hantzis's waiver was knowing and intelligent. *See United States v. Gerritsen*, 571 F.3d 1001, 1008 (9th Cir. 2009) ("We have explained that a defendant's waiver must be evaluated in light of the record as a whole[.]") (citing *United States v. Kimmel*, 672 F.2d 720, 721-22 (9th Cir. 1982)); *see also Erskine*, 355 F.3d at 1170 & n.11 (explaining that the court may look to the circumstances of prior proceedings in the case to determine whether defendant's waiver was knowing and voluntary).

**[3]** Hantzis actively and personally participated in his own defense from the outset of the case, sometimes with, and sometimes without, the aid of counsel. For example, he participated in two plea discussions and negotiations and, in his four-day jury trial, filed numerous pro se motions about most elements of the proceedings in his case, received and reviewed the PSR, and wrote a sentencing memorandum. By actively and intelligently participating in his own defense from the beginning of the case, coupled with what was said at the *Faretta* colloquy, Hantzis understood the nature of the

charges against him, the possible penalties that could be imposed against him, and the dangers and disadvantages of self-representation. *See Erskine*, 355 F.3d at 1167. Hantzis's waiver clearly met the *Faretta* standard.

## B. The district court was not required to renew the *Faretta* colloquy at subsequent hearings in the case

Hantzis also claims that the district court erred by failing to conduct a new *Faretta* colloquy at subsequent hearings in his case. In particular, Hantzis argues that the district court should have renewed its *Faretta* warnings prior to holding the evidentiary hearing on drug testing, which required cross-examination of the government's expert, and again before his sentencing, since that occurred subsequent to the date the United States Supreme Court handed down its decision in *United States v. Booker*, 543 U.S. 220 (2005).

[4] A properly conducted *Faretta* colloquy need not be renewed in subsequent proceedings unless intervening events substantially change the circumstances existing at the time of the initial colloquy. We have held:

> A competent election by the defendant to represent himself and to decline the assistance of counsel once made before the court carries forward through all further proceedings in that case unless appointment of counsel for subsequent proceedings is expressly requested by the defendant or there are circumstances which suggest that the waiver was limited to a particular stage of the proceedings.

*United States v. Springer*, 51 F.3d 861, 864-65 (9th Cir. 1995) (concluding that the defendant's retrial was "obviously" a continuation of the criminal prosecution and previous waiver was intended to stand absent an attempt to withdraw it (quoting *Arnold v. United States*, 414 F.2d 1056, 1059 (9th Cir. 1969)); *see also White v. United States*, 354 F.2d 22, 23 (9th

Cir. 1965) (holding that at resentencing, the district court "was entitled to assume that the waiver was still in effect, and was not required to again advise [defendant] of his right to counsel" where defendant had waived counsel at the plea stage).

**[5]** Our jurisprudence on this point is harmonious with that of the other federal circuits that have considered the issue to date; no federal appellate court has held that renewed *Faretta* warnings are required at each subsequent court proceeding.[2] The essential inquiry is whether circumstances have sufficiently changed since the date of the *Faretta* inquiry that the defendant can no longer be considered to have knowingly and intelligently waived the right to counsel.

**[6]** In this case, the district court conducted an adequate initial *Faretta* colloquy that satisfied each prong of *Erskine*. *See* 355 F. 3d at 1167. Moreover, Hantzis knew at the time of the *Faretta* colloquy that he would be sentenced shortly. The court warned Hantzis that "we've got to bring this to a close. Three years of motions without sentence is almost unprecedented . . . ." During those three years, Hantzis had the benefit of counsel from four different attorneys and was

---

[2]*See, e.g.*, *United States v. McBride*, 362 F.3d 360, 367 (6th Cir. 2004) (adopting the rule that defendant's waiver of counsel at trial carried over to subsequent proceedings absent a substantial change in circumstances); *United States v. Unger*, 915 F.2d 759, 762 (1st Cir. 1990); *United States v. Fazzini*, 871 F.2d 635, 643 (7th Cir. 1989) ("Once the defendant has knowingly and intelligently waived his right to counsel, only a substantial change in circumstances will require the district court to inquire whether the defendant wishes to revoke his earlier waiver."); *Panagos v. United States*, 324 F.2d 764, 765 (10th Cir. 1963) (concluding that there were no facts or circumstances preventing "the initial waiver of the right to counsel, knowingly and intelligently made, from extending to and being fully effective at the time of sentencing" where only a reasonable amount of time intervened between the plea and sentencing); *Davis v. United States*, 226 F.2d 834, 840 (8th Cir. 1955) (holding that defendant's waiver of counsel when pleading guilty was an implied waiver as to any subsequent proceedings, including sentencing four days later).

actively engaged in his own motions practice, including challenging the PSR and drug evidence.

**[7]** Further, there is nothing in the record to suggest that any changes occurred during the six months leading up to sentencing that would have affected Hantzis's understanding of the charges or penalties against him. Though the subsequent evidentiary hearing permitted Hantzis a *second* opportunity to cross-examine the government's expert (neither Hantzis nor his counsel elected to cross-examine the same expert at trial), he already knew what the expert would testify to and that he had no defense to that testimony. Hantzis began challenging the drug evidence against him in 2003, and, partly with the aid of counsel, had his own expert examine the government's drug evidence. Unfortunately for Hantzis, his own drug expert's test results were largely consistent with those of the government's expert. Thus, at the time of the evidentiary hearing concerning drug evidence, there had been no substantial change in circumstances that would have left Hantzis without a clear understanding of the nature of the hearing and of the evidence that would be presented against him.

Hantzis also fails to explain how *Booker* changed the circumstances such that he would be entitled to a new *Faretta* colloquy. Hantzis merely asserts that *Booker* was decided between the time of his motion to represent himself pro se was granted and the date of his sentencing, and assumes that is enough to show changed circumstances.

**[8]** *Booker* was decided on January 12, 2005. 543 U.S. at 220. In *Booker*, the Supreme Court overruled existing law by holding that the mandatory application of the Sentencing Guidelines was unconstitutional under the Sixth Amendment. 543 U.S. at 244-45, 259-60; *see also United States v. Carty*, 520 F.3d 984, 990 (9th Cir. 2008) (en banc) (recognizing that "under the *Booker* remedial regime . . . the Guidelines are no longer mandatory but are only advisory"). However, this change in the law did not constitute a substantial change of

circumstances that affected the nature of the charges against Hantzis or materially affected the range of available penalties to which he was subject, based on his conviction.

The crimes for which Hantzis was charged and convicted of at trial did not change. Based on his conviction, the applicable Guidelines sentence range was 188 to 235 months. Hantzis, when represented by counsel, filed a pro se memorandum challenging this Guidelines range and engaged in active motions practice in the years leading up to his sentencing. Hantzis clearly knew the range of possible sentences against him at the time he waived counsel.

**[9]** The Guidelines range set forth in the PSR and challenged by Hantzis did not change post-*Booker*. All that changed was that the range became advisory rather than mandatory. Accordingly, the range of possible penalties sought against Hantzis, which he had reviewed and challenged, were not materially different than those applicable to him before *Booker*. The district court properly acknowledged the advisory role of the Guidelines and considered the various § 3553(a) factors when sentencing Hantzis to a mid-range, within Guidelines sentence. Thus, *Booker* did not substantially change Hantzis's understanding of the possible penalties that could be imposed on him.

**[10]** Hantzis has not shown that the foregoing was a substantial change of circumstances since the date of his *Faretta* colloquy, and the district court did not err in failing to undertake a new *Faretta* colloquy.

## C. The district court did not err by declining to appoint counsel at sentencing

**[11]** Whether a defendant was denied his Sixth Amendment right to counsel during a proceeding is a question of law to be reviewed de novo. *See United States v. Danielson*, 325 F.3d 1054, 1066 (9th Cir. 2003). The district court did not err

by declining to appoint counsel at Hantzis's sentencing. As previously noted, at the sentencing hearing, Hantzis accused the government and the court of "major fraud," collusion, and forgery. Hantzis also contended that all of his attorneys had been incompetent from the beginning of the case and that he did not "even know what charges have been brought against" him, even though he had personally prepared several pro se motions arguing the specifics of those charges. Hantzis's argument attacked the legitimacy of the investigation, the prosecution, the trial, his conviction, and his attorneys prior to sentencing, but not the sentencing proceeding itself (which was then in process). Moreover, the district court had already considered and denied Hantzis's pre-sentence motions.

**[12]** Even if Hantzis's statement could be construed as requesting counsel at sentencing, "a court must be wary against the 'right of counsel' being used as a ploy to gain time or effect delay." *United States v. Kelm*, 827 F.2d 1319, 1322 (9th Cir. 1987), *overruled on other grounds by United States v. Heredia*, 483 F.3d 913, 920 (9th Cir. 2007) (en banc). Hantzis hired and fired appointed counsel repeatedly throughout the proceedings, and he managed to delay sentencing for three full years after trial. Given the totality of the circumstances, the district court did not err in requiring Hantzis to proceed pro se at sentencing where his conduct was " 'dilatory and hinder[ed] the efficient administration of justice.' " *United States v. Meeks*, 987 F.2d 575, 579 (9th Cir. 1993) (quoting *Kelm*, 827 F.2d at 1322).

**AFFIRMED.**