DA 12-0300

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 254

CITY OF MISSOULA,

      Plaintiff and Appellee,

  v.

MICHELLE RENEE FOGARTY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause Nos. DC 12-25, DC 12-26,
DC 12-28, DC 12-29
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Johnna K. Baffa, Van de Wetering Law Offices, P.C., Missoula, MT

      For Appellee:

      Timothy C. Fox, Montana Attorney General; Pamela P. Collins, Assistant
Attorney General, Helena, Montana

      Jim Nugent, Missoula City Attorney; Tiffany Heaton, Deputy City Attorney,
Missoula, Montana

Submitted on Briefs:  April 24, 2013

Decided:  September 5, 2013

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     This appeal arises out of four misdemeanor criminal cases filed against Michelle Renee Fogarty in the Missoula Municipal Court. The cases were heard in bench trials, all held on the same day, at which Fogarty represented herself. Fogarty appealed her convictions to the Fourth Judicial District Court, Missoula County, on grounds that she had been denied her constitutional right to counsel. The District Court generally affirmed the convictions, and Fogarty now appeals to this Court. We affirm.

## BACKGROUND

¶2     The first of the four cases here on appeal was an October 2010 charge of no proof of motor vehicle insurance. An attorney from the Missoula Office of Public Defender (OPD) was appointed to represent Fogarty. Although she was represented by counsel, Fogarty filed several rambling pro se documents in which she, among other things, complained that her counsel was "accusatory and bullying" and was not properly representing her. At a March 9, 2011, status hearing, Fogarty told the court she had defended herself before, in a proceeding in Minnesota, she had done a better job than the public defender, and she would be proceeding pro se. Following a dialogue about Fogarty's competence, Fogarty told the court she would not cooperate with a mental health evaluation to determine if she was competent to proceed to trial. "Being not trained as an attorney does not make you . . . have mental disease." The court appointed Robin Ammons as standby counsel to assist her, but Fogarty declared she would not be asking Ammons for any help. Later, another contract public defender (Sandefur) was appointed to represent Fogarty, but he subsequently withdrew on

grounds of a breakdown in the attorney-client relationship, and yet another contract public defender took over. That attorney was allowed to withdraw upon his motion, filed at Fogarty's request.

¶3 In the meantime, in November of 2010, Fogarty was charged with resisting arrest and violating a privacy in communication statute by electronically using profane/obscene language with the purpose to harass. OPD filed a notice of appearance, followed by notice of appearance by conflict counsel contracting with OPD. Again, although Fogarty was represented by counsel, she filed voluminous rambling handwritten documents, including complaints that her counsel was threatening her, and a request to meet with the judge "regarding some appropriate legal representation."

¶4 Also in the meantime, Fogarty was charged with criminal contempt and disorderly conduct during a March 9, 2011, court appearance. A regional deputy public defender entered notices of appearances of two private attorneys, in succession, who contracted with OPD to represent Fogarty. The first of those two contract attorneys advised the court he had concerns about Fogarty's ability to assist in her defense and was in the process of investigating this issue. He later was allowed to withdraw on grounds of a breakdown in the attorney-client relationship. The next contract attorney (Foley) moved to withdraw on grounds that Fogarty had created a conflict of interest by making allegations that Foley and her law firm had acted unethically. Attorney Birdsong entered an appearance but later moved to withdraw on grounds that Fogarty had told him she no longer wanted him to represent her.

¶5 The fourth group of charges involved in this appeal arose in August of 2011, when

3

Fogarty was charged with disorderly conduct and resisting arrest in a Missoula restaurant. In that case, the court granted two attorneys' motions to be allowed to withdraw—the first, at Fogarty's request, and the second, due to conflicts of interest that arose after Fogarty made complaints about the attorney. At that point, the court ordered that any further filings should be sent to Fogarty personally.

¶6 On November 3, 2011, the Missoula regional OPD office filed notice that Lisa Kauffman, a contract attorney with OPD, would be appearing for Fogarty in the first three of the above four cases. Then, on November 7, 2011, Fogarty appeared in the Missoula Municipal Court for a preliminary hearing on all four cases, held before retired District Judge Harkin. Kauffman did not appear. The court asked Fogarty if she had a new attorney, and Fogarty replied she felt she should represent herself at her trials, all four of which had been scheduled for December 22, 2011. At that point, the following exchange occurred:

Judge: You want to represent yourself?

Fogarty: Yeah.

Judge: Okay, that's fine. You have the right to do that and so all we need now is for you to sign this little form here. And this is the form that will tell you what day you should be getting your—

Fogarty: Here?

Judge: Yeah. Here's your copy.

Fogarty: Okay.

Judge: And that'll be—the day you should get your notice of the trial is December 16.

Judge Harkin then went on to make sure Fogarty had information on all the evidence the

4

State would be using against her.  Two days later, Kauffman moved to withdraw in the three cases in which her appearances had been entered, on grounds that OPD had instructed her to do so and that she had received notice from the Clerk of the Municipal Court that Fogarty had indicated she wanted to proceed pro se.

¶7     On December 22, 2011, just before the first of the four bench trials began, the Municipal Court judge reviewed with Fogarty the possible penalties for the offenses charged. The court then asked Fogarty whether she had previous experience in trials.  Fogarty responded at some length on that and several related subjects, including describing the Minnesota case in which she stated she had been forced to plead guilty.  She also complained that her right to speedy trial has been violated in the matters pending before the Municipal Court.  Fogarty stated, "I feel I should have an attorney that will effectively represent me, but that has not happened."  The court responded:

> [O]ne of the things is you can't keep firing your lawyers.  That's the problem because that's pretty much a rejection of being represented by an attorney. . . . What I'm only inquiring about is I want to make sure that you're capable of representing yourself.  You seem to be very capable of that. You know the penalties involved here.  You've had experience with the legal system.  You are an articulate, thinking person and I think you can represent yourself.

Fogarty then replied that she did not want to "go to jail for a year based on all these cops coming around the courtroom here and nobody else present.  I'm a little concerned."  The judge advised her that the officers in the courtroom were witnesses for the trials.  After Fogarty responded with complaints about corruption of police officers, the court stated, "I determine that you are able to represent yourself today."[1]

---

[1] Despite the trial court's specific determination that Fogarty was capable of representing herself,

¶8 Fogarty pled guilty to driving without insurance and the court fined her $250 on that charge. Following the bench trials, the court found Fogarty guilty on all of the remaining charges. It sentenced her to 10 days in jail for disorderly conduct; 180 days in jail, all suspended, for criminal contempt; 10 days in jail for disorderly conduct and 180 days in jail for resisting arrest, with 180 days suspended; 180 days in jail, suspended with conditions, for violation of privacy in communications; and 180 days in jail, suspended, for resisting arrest.

¶9 On appeal, the Fourth Judicial District Court stated "It is clear from the record that [Fogarty] is a disturbed person who has a great deal of difficulty dealing with other people." The court set forth the histories of the various cases before it on appeal. Relying on case law regarding defendants who had not unequivocally requested to proceed pro se or waived their right to counsel, but who were found to have effectively waived their right to counsel by their dilatory conduct hindering the efficient administration of justice, the court determined the Municipal Court had made the appropriate balancing decision between Fogarty's right to counsel and her "refus[al] to work with everyone appointed to represent [her]." The court generally affirmed the judgments entered in the Municipal Court. However, it set aside and dismissed Fogarty's conviction of disorderly conduct during her March 9, 2011, court appearance, on double jeopardy grounds.

the dissent asserts that her "mental health issues" or her "compromised mental health" were bases enough to require reversal of the courts' decisions below. Nothing in the record substantiates that Fogarty was unable to proceed without counsel. Neither party nor any of the prior counsel moved the court for an expert mental evaluation and, as noted, Fogarty specifically rejected the need for an evaluation. As this Court has previously held, even when facing involuntary mental commitment, individuals can nevertheless be fully competent to waive basic fundamental rights. *In re R.W.K.*, 2013 MT 54, 369 Mont. 193, 297 P.3d 318; *In re P.A.C.*, 2013 MT 84, 369 Mont. 407, 298 P.3d 1166. If anything, the record shows that Fogarty was capable of deciding to represent herself.

**STANDARDS OF REVIEW**

¶10     Where there is a question of whether a defendant has waived her right to counsel, we will not disturb the district court's findings "as long as substantial credible evidence exists to support that decision." *State v. Clary*, 2012 MT 26, ¶ 12, 364 Mont. 53, 270 P.3d 88.  We defer to a trial court's consideration of a request to appoint new counsel "and the court's determination will be sustained absent an abuse of discretion." *State v. Craig*, 274 Mont. 140, 149, 906 P.2d 683, 688 (1995).

**DISCUSSION**

¶11     The Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee persons charged with criminal offenses the right to the assistance of counsel.  Since *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963), an indigent defendant in a criminal matter is entitled to have an attorney appointed at public expense.  *Craig*, 274 Mont. at 148, 906 P.2d at 688.

¶12     A defendant may, however, waive the right to counsel, as long as the court determines the waiver is voluntary, knowing, intelligent, and unequivocal.  *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975); § 46-8-102, MCA.  No particular sort of questioning or inquiry is required before a trial court allows a defendant to represent himself or herself, so long as the court is satisfied that the defendant is "aware of the dangers and disadvantages of self-representation, so that . . . 'he knows what he is doing and his choice is made with eyes open.'" *State v. Langford*, 267 Mont. 95, 99, 882 P.2d 490, 492 (1994), *quoting Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541.  "In applying the *Faretta* standard, we have repeatedly held that a trial court is not required to advise a defendant specifically of the

7

dangers and disadvantages of self-representation as long as the court makes inquiry of the defendant to the extent it deems necessary to ensure that the defendant's waiver of counsel is voluntary, knowing, and intelligent." *State v. Insua*, 2004 MT 14, ¶ 19, 319 Mont. 254, 84 P.3d 11.

¶13    Further, a defendant's waiver of the right to counsel must be evaluated in light of the record as a whole. *United States v. Gerritsen*, 571 F.3d 1001, 1008 (9th Cir. 2009). The reviewing court may look to the circumstances of prior proceedings in the case to determine whether the defendant's waiver was knowing and voluntary. *United States v. Erskine*, 355 F.3d 1161, 1170 n.11 (9th Cir. 2004). "A properly-conducted *Faretta* colloquy need not be renewed in subsequent proceedings unless intervening events substantially change the circumstances existing at the time of the initial colloquy." *U.S. v. Hantzis*, 625 F.3d 575, 580-81 (9th Cir. 2010).

¶14    In addition, a defendant who does not unequivocally request to proceed pro se and does not expressly waive her right to counsel may effectively do so by failing to cooperate with a court-appointed attorney. *Craig*, 274 Mont. at 148, 906 P.2d at 688; *Hantzis*, 625 F.3d at 583. And "[b]are unsupported allegations are insufficient to establish the total lack of communication required to warrant appointment of new counsel." *Robinson v. State*, 2010 MT 108, ¶ 22, 356 Mont. 282, 232 P.3d 403.

¶15    In the present case, Fogarty contends the Municipal Court clearly abused its discretion when it made no inquiry at the November 7 hearing about the absence of her newly-appointed attorney, Lisa Kauffman. She further contends that, because the court did not enter a written order allowing Kauffman to withdraw, Kauffman was her attorney of record

8

on December 22, 2011.

¶16    At the outset of the November 7 hearing, Fogarty told the court she wished to proceed pro se. As a result, and given the histories of these cases, any procedural errors by the court in beginning that hearing without Kauffman's presence and in failing to later enter a written order granting Kauffman's motion to be allowed to withdraw did not result in any deprivations of Fogarty's rights.

¶17    Fogarty argues the Municipal Court clearly abused its discretion in finding her capable of representing herself at trial. We disagree. Fogarty had refused to pursue any inquiry into a possible claim that she was mentally incompetent for purposes of defending the charges against her. She told the court she had represented herself in criminal proceedings before, in Minnesota. In discussing the current charges against her, while she tended to ramble into other matters, she also was able to discuss the particulars of the current charges, and certainly seemed to comprehend the possible penalties she faced if convicted. A court cannot deny a request to represent oneself on the basis that the defendant would not do so adequately. *State v. Swan*, 2000 MT 246, ¶ 18, 301 Mont. 439, 10 P.3d 102.

¶18    Fogarty cites *State v. Hass*, 2011 MT 296, ¶ 21, 363 Mont. 8, 265 P.3d 1221, for the proposition that it is a violation of a criminal defendant's constitutional right to counsel for a court to allow the defense attorney to withdraw, without notice to the defendant, and then to proceed to trial without first obtaining from the defendant a waiver of the right to counsel. That is not the sequence of events that occurred in the present case, however.

¶19    The facts of this case are more similar to those in *Hantzis*. In that case, Hantzis was charged with possession of methamphetamine with intent to distribute. He went back and

9

forth on whether he wanted to be represented by counsel or to proceed pro se, and he personally filed many motions even when he was represented by counsel. The trial court eventually granted Hantzis's motion to proceed pro se. On appeal, Hantzis argued he had been denied his right to counsel on grounds that the court's *Faretta* colloquy with him had been inadequate. The appeals court disagreed, stating that waiver of the right to counsel must be evaluated in light of the record as a whole, and the court may look to the circumstances of prior proceedings in the case to determine whether the defendant's waiver was knowing and voluntary. *Hantzis*, 625 F.3d at 580.

¶20 The dissent's reliance on § 37-61-403, MCA, to support the argument that proper change-of-attorney procedures were not followed here is misplaced. That statute allows for a change of attorney "upon order of the court, upon application of either client or attorney." That is essentially the procedure that was followed here. At the November 7, 2011, hearing, after Fogarty informed the court that she wanted to represent herself, the court indicated its assent, saying "that is fine." The judge then had Fogarty sign the preliminary hearing/pre-trial order form, gave her a copy, and advised that she should receive her notice of trial by December 16. Two days later, Fogarty's latest appointed attorney filed a formal motion to withdraw, indicating she had received a notice from the clerk of court that Fogarty was proceeding pro se.

¶21 Moreover, the dissent's comments in regard to the individual OPD counsel assigned to Fogarty's cases assume that courts assign the individual attorneys, rather than OPD as an entity, to represent indigent criminal defendants. That is not the case. As a rule, OPD, not the court, assigns the individual counsel to handle a case. *See* § 47-1-215(2)(b), MCA. The

10

necessity of this for managing OPD's caseloads, particularly in busy courts of limited jurisdiction, should be obvious. It is clear from the record in this case that the Municipal Court intended OPD to be counsel of record.

¶22 Under the circumstances presented here, we conclude it was within the Municipal Court's discretionary authority to accept Fogarty's decisions to represent herself in these matters. Substantial credible evidence from the colloquies at the proceedings in which the court determined Fogarty could represent herself, and also from the prior filings and proceedings in the four actions here on appeal, supports the Municipal Court's decision to allow Fogarty to represent herself. Fogarty had gone back and forth about whether she wished to represent herself or to rely on counsel to represent her. At hearings held on March 9, 2011, November 7, 2011, and December 22, 2011, she asked to be allowed to do so. Fogarty had gone through several lawyers in each of the cases filed against her as a result of communication problems between herself and the attorneys, or counsels' conclusions that they must withdraw due to ethical claims Fogarty had made against them. Just before her trials began on December 22, 2011, Fogarty did not dispute the City's statement that she had fired Kauffman, nor did she disagree with the court's statement that she had fired all of her attorneys. To the extent that Fogarty did not expressly and unequivocally waive her right to counsel because her decision was inconsistent over time, she effectively did so by failing to cooperate with a series of court-appointed attorneys.

¶23 The Opinion of the District Court is affirmed.

/S/ MIKE McGRATH

11

We concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JIM RICE

Justice Laurie McKinnon, dissenting.

¶24 I dissent from the decision of the Court finding that Fogarty, a mentally ill defendant, waived her right to counsel because she failed to cooperate with "a series," Opinion, ¶ 22, of court-appointed attorneys. The record does not support such a conclusion and the appropriate inquiry to establish a knowing and intelligent waiver by Fogarty was never conducted by the Municipal Court.

¶25 Fogarty undisputedly had mental health issues which were repeatedly raised by her court-appointed counsel and the Municipal Court. The District Court noted at the onset of its review that "[i]t is clear from the record that the Defendant is a disturbed person who has a great deal of difficulty dealing with other people." A review of the court records and transcript of trial confirms this. There is a voluminous amount of correspondence and assertions from Fogarty to the court describing judges, attorneys, and law enforcement as "murderers," "stalkers," "child molesters," and the like. Among Fogarty's disjointed and rambling communications, she references various other criminal actions allegedly committed against her in other states, as well as abuse of her dogs in order to get her to plead guilty. Her first attorney of record, Russell LaFontaine, raised Fogarty's fitness to proceed in the

12

initial omnibus hearing memorandum filed on December 29, 2010. Fogarty's mental health was additionally questioned by the Municipal Court Judge who attempted to get Fogarty to agree to a mental health evaluation. Although there appears to be no action taken by the court, counsel or otherwise which affirmatively addresses Fogarty's mental health, indications of Fogarty's compromised mental health are relevant in determining whether the Municipal Court was correct in finding that Fogarty validly waived her right to counsel and could represent herself at trial.

¶26 I agree that a defendant's waiver of the right to counsel must be evaluated in light of the whole record.[1] *United States v. Gerritsen*, 571 F.3d 1001, 1008 (9th Cir. 2009). Therefore, to the extent the record permits, the two hearings where there was an attempt by the Municipal Court to address Fogarty's right to counsel will be set forth in their entirety.

¶27 The court conducted a preliminary hearing on November 7, 2011, where Fogarty appeared without counsel. The following inquiry was made by the court:

> Clerk: She has a new attorney, Judge. I don't know where the attorney is.
>
> Judge: Do you have a new attorney?

---

[1] The Court suggests that because no motion was filed for an expert mental evaluation, that Fogarty's mental health was not an issue in these proceedings. This is contrary, however, to the requirement that the record be considered in its totality. There is little dispute, as found by the District Court, that Fogarty is a "disturbed person" who has "great difficulty getting along with other people." Additionally, the Municipal Court Judge and Fogarty's first counsel questioned her mental capacity on the record and in pleadings. The pleadings, substitutions, and correspondence from Fogarty clearly suggest Fogarty's mental health was compromised. The totality of the record must be reviewed to determine whether a waiver of a fundamental right was valid. Hence the issue is not whether Fogarty could legally waive her right to counsel, a matter not in dispute, *In re R.W.K.*, 2013 MT 54, 369 Mont. 193, 297 P.3d 318, but whether, considering the totality of the record, Fogarty's waiver was knowingly, voluntarily, and intelligently made following an inappropriate inquiry by the court.

13

Fogarty: You know, I uh don't and I uh have not been in contact with the public defender's office. I've received nothing in the mail. And I just, you know, I've done jail time for most of what I've been ticketed for; I just feel like I should represent myself.

Judge: You want to represent yourself?

Fogarty: Yeah.

Judge: Okay, that's fine. You have the right to do that and so all we need now is for you to sign this little form here. And this is the form that will tell you what day you should be getting your . . . .

Fogarty: Here?

Judge: Yeah. Here's your copy.

Fogarty: Okay.

Judge: And that'll be – the day you should get your notice of the trial is December 16. If you don't get it by December 23, call us. And he'll have an omnibus form for you to fill out and sign, and then we'll be ready for your trial when it's set.

.    .    .

Fogarty: I appreciate the fact the public defender's office didn't even attempt to come and pretend to represent me today.

¶28    The Municipal Court subsequently scheduled Fogarty's trials for December 22, 2011. On December 22, 2011, the Municipal Court proceeded with Fogarty's trials in the absence of court-appointed counsel.[2] The court explained which of Fogarty's cases were on the docket, and Fogarty was provided with a handout designed to assist defendants proceeding without counsel. Fogarty was advised of the maximum penalties for her alleged crimes and she was asked whether she "had experience in trials before since [she was] representing

---

[2] Although Fogarty's most recent court-appointed counsel had filed a motion to withdraw, the record does not reflect that a court order was issued allowing counsel to withdraw from Fogarty's cases. On December 22, 2011, the Municipal Court inquired of the City Attorney whether they could locate Fogarty rather than proceed in absentia as the State requested. Within a few minutes, Fogarty was located by law enforcement and brought to the court. Fogarty claimed she had never received notice that her trials were scheduled for that day. Notably, this appears plausible since the trials were held the day before Fogarty had been instructed to call to inquire about her scheduled trial date. Thus, Fogarty was not prepared for the trials on December 22, 2011.

14

[her]self." Fogarty responded that she was only representing herself because of the corruption of the judges, attorneys and law enforcement. She rambled on about threats and harassment and being intimidated while in her jail cell with comments about her dogs. The Municipal Court determined "[w]hat this tells me is that you do have some experience in the legal system – some of it good, and some of it not so good . . . . You seem to be able to handle yourself quite well . . . ." Fogarty responded that "I feel I should have an attorney that will effectively represent me, but that has not happened." The Municipal Court indicated that Fogarty's "firing of [her] attorneys is a rejection of representation," and found that Fogarty was able to proceed without counsel at her trial. The court stated:

> One of the things is you can't keep firing your lawyers. That's the problem because that's pretty much a rejection of being represented by an attorney.
>
> .    .    .
>
> What I'm only inquiring about is I want to make sure that you're capable of representing yourself. You seem to be very capable of that. You know the penalties involved here. You've had experience with the legal system. You are an articulate, thinking person and I think you can represent yourself.

These statements, together with those made during the hearing on November 7, 2012, comprise the record relating to Fogarty's waiver of her right to counsel.

¶29    Courts will indulge every reasonable presumption against the waiver of the fundamental right to assistance of counsel. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938); *see also Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 1242 (1977). In *Johnson*, the Supreme Court explained:

> [W]e do not presume acquiescence in the loss of fundamental rights. A waiver is ordinarily an intentional relinquishment or abandonment of a

15

known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

*Johnson*, 304 U.S. at 464, 58 S. Ct. at 1023 (internal quotation marks and footnote omitted).

"The record must show . . . that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver." *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S. Ct. 884, 890 (1962).

¶30 The Supreme Court set forth the criteria for a valid waiver of the right to counsel in *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525 (1975). *Faretta* does not mandate that a specific colloquy or questioning occur—only that the trial court satisfy itself that the defendant is aware of the dangers and disadvantages of self-representation, that the defendant knows what he or she is doing, and that the choice to proceed without counsel is made with open eyes. *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541; *see also State v. Colt*, 255 Mont. 399, 403, 843 P.2d 747, 749-50 (1992).

¶31 After the Supreme Court's decision in *Faretta*, this Court adopted the requirement that "the request to represent oneself must be unequivocal." *State v. Langford*, 267 Mont. 95, 99, 882 P.2d 490, 492 (1994). We noted in *Langford*:

"If the court appoints counsel, the defendant could, on appeal, rely on his intermittent requests for self-representation in arguing that he had been denied the right to represent himself; if the court permits self-representation the defendant could claim he had been denied the right to counsel. . . . The requirement of unequivocality resolves this dilemma by forcing the defendant to make an explicit choice. *If he equivocates, he is presumed to have requested the assistance of counsel.*"

16

*Langford*, 267 Mont. at 100, 882 P.2d at 493 (emphasis added) (quoting *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989). In addition, the trial court must ensure the defendant is competent to abandon his right to assistance of counsel and proceed pro se. *Colt*, 255 Mont. at 403, 843 P.2d at 749-50.

¶32 The record in the instant case indicates that Fogarty was very dissatisfied with her counsel and, in fact, attributed assaultive and abusive behavior to many of them. The record also reveals Fogarty had difficulty getting along with her appointed counsel and that several attorneys cited a breakdown in the attorney-client relationship as a reason necessitating their withdrawal from representation. Without question, Fogarty appears to have been a challenging client to represent. Nevertheless, it is the obligation of counsel and the court to ensure that defendants, despite challenges to representation presented by their mental health, receive their constitutional right to the effective assistance of counsel.

¶33 What is clear from the questioning of Fogarty at her trial, and at the several hearings conducted prior to trial, is that she wanted to be represented by an attorney, but believed the attorneys appointed had been ineffective. Fogarty remained steadfast in her position that none of the attorneys appointed thus far were competent; that she desired to have counsel represent her; and that she accepted she would have to represent herself if she were only appointed counsel that was ineffective. Fogarty appreciated that she could potentially receive a year incarceration and, in response to questioning from the court, stated that "I feel I should have an attorney that will effectively represent me . . . ." In light of Fogarty's request for counsel at the start of her December 22, 2011 trial, and upon consideration of her statements regarding counsel made at other times during these proceedings, I conclude that

17

Fogarty did not make an unequivocal request to represent herself sufficient to satisfy *Langford*. As we stated in *Langford*, it is presumed that a defendant who equivocates has requested the assistance of counsel. *Langford*, 267 Mont. at 102, 882 P.2d at 494. Fogarty's objections were not that she wanted to represent herself, but rather that she wanted *effective* counsel to represent her.

¶34 Even were we to assume that Fogarty made an unequivocal request to represent herself, there does not exist in the record before us substantial and credible evidence to support the Municipal Court's determination that Fogarty acted voluntarily, knowingly, and intelligently in waiving her right to counsel. While this Court does not require that a trial court adhere to a rigid set of requirements in ascertaining a valid waiver of the right to counsel, there must exist substantial and credible evidence ensuring that "the defendant is competent to abandon his right" and proceed pro se. *Colt*, 255 Mont. at 403, 843 P.2d at 749. Competence does not necessarily mean that "he have the skill and experience of a lawyer," but it does mean that the defendant's relinquishment of his right to counsel "must not only be voluntary, but also made knowingly and intelligently." *Colt*, 255 Mont at 403-04, 843 P.2d at 750 (citing *State v. Plouffe*, 198 Mont. 379, 385, 646 P.2d 533, 536 (1982)).

¶35 Further, we held in *State v. Hartsoe*, 2011 MT 188, 361 Mont. 305, 258 P.3d 428, that an accused "must 'be made aware of the dangers and disadvantages of self representation[,] [so that the record will establish that he knows what he is doing and his choice is made with eyes open].' " *Hartsoe*, ¶ 39 (brackets in original) (quoting *Colt*, 255 Mont at 407, 843 P.2d at 751). We have noted that

18

[t]he test focuses, not on what a defendant was told, but on a determination that a defendant understands his decision and is proceeding voluntarily. This is a stricter and higher standard, thus satisfying any increased measure of protection provided under the Montana Constitution's guarantees of the right to counsel and to a fair trial.

*State v. Insua*, 2004 MT 14, ¶ 20, 319 Mont. 254, 84 P.3d 11.

¶36    In light of this precedent, I do not believe the record contains substantial evidence to support a determination that Fogarty validly exercised her right to proceed without counsel. While Fogarty was advised of the maximum penalties, she was not "made aware of the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541. The record does not support a determination that she was competent to exercise a valid waiver or that the waiver was voluntarily and intelligently made.

¶37    The State argues, and the Municipal Court and District Court found, that Fogarty's behavior in "firing" her counsel was "to obstruct and delay the administration of justice in her case" and waive her Sixth Amendment right to counsel. The District Court, citing as authority for its position *State v. Craig*, 274 Mont. 140, 906 P.2d 683 (1995), and *United States v. Kelm*, 827 F.2d 1319 (9th Cir. 1987), *overruled in part by United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007), determined that "[d]efendants cannot be allowed to bring the justice system to a halt by repeatedly demanding counsel but then refusing to work with everyone appointed to represent them." It is well-established that the right to assistance of counsel does not grant to defendants the right to counsel of their choice. *Craig*, 274 Mont. at 149, 960 P.2d at 688.

¶38    In *Craig* we determined:

In refusing to cooperate with his appointed counsel and, at the same time insisting that he was not asking to proceed pro se, Craig was attempting to force the appointment of new counsel. This Court cannot countenance such dilatory and manipulative tactics at the expense of the efficient administration of justice.

*Craig*, 274 Mont. at 153, 906 P.2d at 691. We thus stated in *Craig* that " 'at some point a criminal defendant can be deemed to have waived to a certain extent his constitutional right to effective assistance by virtue of his unreasonable refusal to communicate with his attorney,' " and that a " 'persistent unreasonable demand for dismissal of counsel [is] the functional equivalent of a knowing and voluntary waiver of counsel.' " *Craig*, 274 Mont. at 152, 906 P.2d at 690 (quoting *Thomas v. Wainwright*, 767 F.2d 738, 743 (11th Cir. 1985). Thus, we affirmed the district court's conclusion that Craig was not denied the effective assistance of counsel and that any compromise in counsel's effectiveness was directly attributable to Craig's lack of cooperation. *Craig*, 274 Mont. at 155, 906 P.2d at 692. Significantly, counsel in *Craig was present throughout the trial* and provided assistance. At issue in *Craig* was a motion to substitute counsel made *by the defendant*. In the present matter, counsel made the requests for substitution, not Fogarty.

¶39 Unlike *Craig*, the Municipal Court in this case effectively terminated, albeit without an order, any appointment of counsel on Fogarty's behalf by requiring that Fogarty proceed on her own. Up to the time of trial, the court files reflect that Fogarty had counsel appointed to represent her. Absent an unequivocal assertion by Fogarty that she desired to proceed without counsel, any inquiry by the court should have taken place with counsel present. In the presence of Fogarty's counsel, the court could have inquired and determined whether to (1) terminate appointment of counsel after a valid waiver by Fogarty pursuant to *Faretta*; (2)

20

determine that Fogarty, although not requesting to proceed without counsel has, through her behavior, waived her right to counsel; or (3) continue Fogarty's representation by court-appointed counsel. If Fogarty continued to insist counsel was ineffective, then the court could have assessed the validity of Fogarty's assertions. *See State v. Dethman*, 2010 MT 268, 358 Mont. 384, 245 P.3d 30 (wherein we held that when a defendant complains about the effective assistance of counsel, a district court must make an "adequate initial inquiry" as to whether defendant's allegations are "seemingly substantial.").

¶40     This Court states that *State v. Hass*, 2011 MT 296, 363 Mont. 8, 265 P.3d 1221, does not have the same "sequence of events that occurred in the present case." Opinion, ¶ 18. The Court does not explain how the "sequence" in each case materially differs. To the contrary, we held in *Hass* that "the Justice Court's actions of permitting Hass's counsel to withdraw, thereby leaving Hass without legal representation, and then proceeding to try, convict, and sentence Hass to jail, without first obtaining from him a voluntary, knowing, and intelligent waiver of his right to counsel, violated Article II, Section 24." *Hass*, ¶ 21. This is what happened in Fogarty's case. The cases may be distinguished, however, upon each defendant's mental health—Fogarty showed significant signs of mental illness observed by her counsel and the court.

¶41     Lastly, this Court finds support in the Ninth Circuit decision of *United States v. Hantzis*, 625 F.3d 575 (9th Cir. 2010). Opinion, ¶ 19. In *Hantzis*, however, the court inquired whether Hantzis understood the hazards of representing himself, whether he understood the "severe disadvantage which may hurt [him] down the road," and whether he wanted either a public defender or to represent himself. *Hantzis*, 625 F.3d at 578. Each time

21

Hantzis replied *unequivocally* that he wanted to represent himself. Moreover, there were no indications that Hantzis had any mental disabilities.

¶42　In the instant proceedings, all requests for substitution of counsel were made by the attorneys themselves, on various grounds, presumably related to Fogarty's conduct. In most instances, there was no oversight from the Municipal Court or involvement from Fogarty herself. No initial inquiry was conducted as required by *Dethman* to determine whether counsel was ineffective or whether substitution should otherwise be granted. While Fogarty insisted on "effective counsel," any request by Fogarty to proceed without counsel, in light of the November 7, 2011, and December 22, 2011 trial transcripts, is equivocal at best.

¶43　Against this background, I make the following additional observations. Counsel may not withdraw from a criminal case involving an indigent defendant once they have undertaken the responsibility of representation because they now determine a particular client is difficult. Representing criminal defendants who are indigent, especially those who are potentially mentally ill, is difficult and should not be undertaken lightly. At a minimum, a record should have been made establishing the circumstances which prevented counsel from continuing with their representation of Fogarty. In this manner, the Municipal Court would have had the matter before it and could have begun the process of managing these proceedings consistent with precedent regarding a valid exercise of the right to proceed pro se or a valid substitution of counsel based upon claims of ineffectiveness.

¶44　The record of the "series" of attorneys should be assessed. On November 16, 2010, Russell LaFontaine entered his appearance on behalf of Fogarty and remained in Fogarty's cases for two months. Without an order of the Municipal Court or consent from Fogarty,

22

LaFontaine filed his withdrawal, and on January 14, 2011, the appearance of Robin Ammons was entered by the OPD.

¶45    Two months later, on March 15, 2011, the appearance of Patrick Sandefur was entered as contract counsel for the OPD, also without a court order or consent from Fogarty for the change of counsel.  After citing a breakdown in the attorney-client relationship as well as Montana Rule of Professional Conduct 1.6,[3] Sandefur's appearance was stricken by the Municipal Court, and the OPD was ordered to appoint new counsel.  Sandefur's withdrawal and the subsequent reappointment of the OPD were in compliance with § 37-61-403, MCA,[4] because they were effectuated pursuant to a Municipal Court order.

---

[3]  Rule 1.6 – Confidentiality of Information.
      (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).
      (b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:
      (1) to prevent reasonably certain death or substantial bodily harm;
      (2) to secure legal advice about the lawyer's compliance with these Rules;
      (3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved or to respond to allegations in any proceeding concerning the lawyer's representation of the client; or
      (4) to comply with other law or court order.

[4]  Section 37-61-403, MCA, provides:
      **Change of attorney.** The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows:
      (1) upon consent of both client and attorney, filed with the clerk or entered upon the minutes;
      (2) upon the order of the court, upon the  application of either client or

23

¶46    On July 28, 2011, the OPD appointed Kathleen Foley. However, Foley withdrew one month later on August 31, 2011, citing "numerous and scandalous allegations" made by Fogarty against Foley's firm. The Municipal Court issued an order granting Foley's Motion to Withdraw. On October 20, 2011, Gregory Birdsong entered his appearance on behalf of Fogarty, but he filed a motion to withdraw on October 31, 2011, citing a breakdown in the attorney-client relationship and Rule 1.6. In the four Municipal Court files for the four cases pending against Fogarty at that time, only one contains an order signed by a Municipal Court Judge allowing Birdsong's withdrawal.

¶47    Finally, on November 4, 2011, Lisa Kaufman entered her appearance on behalf of Fogarty; however, Kaufman was not present at the November 7, 2011 preliminary hearing. The Court nevertheless proceeded to inquire of Fogarty regarding self-representation. Two days later Kaufman filed a formal motion to withdraw after receiving an email from the clerk of court that Fogarty was proceeding pro se. Our Opinion today suggests that this, as well as the "series" of prior attorneys is an acceptable manner of handling indigent representation. I do not concur with this view.

¶48    The number of substitutions in these proceedings is alarming, and, upon initial inquiry, appear to indicate Fogarty is abusing the system by "firing" her counsel and continuing to insist on representation. Clearly no defendant should be permitted to manipulate the process in this manner. However, statutory requirements and case law exist to protect against violations of the right to counsel and to protect counsel as well. Once counsel have chosen to enter their appearance, any withdrawal must be made in accordance

attorney, after notice from one to the other.

with the provisions of § 37-61-403, MCA, and case law regarding substitution and waivers. A motion that complies with § 37-61-403, MCA, and sets forth reasons for the request, will normally suffice to gain court approval and allow a substitution of counsel. That these proceedings occurred in an overburdened Municipal Court provides no exception to the law regarding the right to counsel. It is my position that this is unacceptable in light of the fundamental right that was at stake.

¶49     I respectfully dissent from the decision of the Court finding that Fogarty, a mentally ill defendant, waived her right to counsel by failing to cooperate with a "series" of court-appointed counsel.

/S/ LAURIE McKINNON